Argument for the appellant.

## No. 6246.

### L. B. BARKER *v.* JANE G. TORREY ET AL.

| 69 | 7 |
|----|----|
| 90 | 349 |

1. PURCHASER OF SCHOOL LAND.—An actual settler in good faith, who purchased school land under the provisions of the act of April 12, 1883, (Gen. Laws, p. 85), and paid one-thirtieth of the purchase money and one year's interest, in January, 1884, his application to purchase having been made in December, 1883, thereby satisfied all claim in favor of the State for interest for one year after the date of the purchase, and the land was not subject to forfeiture for non payment of interest for the year 1884.

2. SAME.—The requirement of the act that one year's interest should be paid by such actual settler at the time of purchase, can not be construed as evincing an intention to collect (by way of interest) compensation for the use made of the land before the date of purchase. Such a construction would involve a disregard of the meaning of the word *interest,* which is the compensation allowed by law, or fixed by the parties, to a contract for the use, forbearance or detention of money.

3. SAME.—Under the act of April 12, 1883, a purchaser who paid the interest required at the date of purchase in January, 1884, had until the first day of March, 1886, to pay the second instalment of interest. That time was extended by the act of February 16, 1885, until the first day of August, 1886.

4. CONSTITUTION CONSTRUED.—A law will not be declared unconstitutional unless it is clearly so, and in cases of doubt it will be held valid.

5. SAME.—The power of the Legislature, under the Constitution, to pass an act to suspend for a time the right of the State to forfeit the right of purchasers of school lands for non payment of interest, is a matter of such doubt as to render it improper for the Supreme Court to declare the act unconstitutional.

APPEAL from Jones. Tried below before the Hon. J. V. Cockrell.

The character of the action, and so much of the conclusions of law and fact as were found by the trial judge, deemed important, are manifest from the opinion.

*Charles I. Evans,* for appellant, cited General Laws 1883, chapter 88, section 10, page 88; Holliman v. Peebles, 1 Texas, 703; 3 Cranch, 349–351; 8 Id., 405–9; Constitution of 1876, article 1, section 16; Cooley's Constitutional Limitations (5 ed.), 456; Constitution of 1876, article 7, section 4; Abel v. Lee, 6 Texas, 427; and Gray v. McFarland, 29 Texas, 169.

*Bentley & Bowyer,* for appellee.

STAYTON, ASSOCIATE JUSTICE. This suit is one in which the appellant, to be entitled to the relief which he seeks, must show that he has the superior right to the land which is the subject of controversy; hence, although he seeks equitable relief, it is essentially an action to try title. Such being the character of the suit, the pleadings were such as rendered any proper evidence to show the title of either party admissible.

J. R. Lewis, being an actual settler in good faith on the land prior to January 1, 1883, on December 29, 1883, made an application to purchase the section of which that in controversy is a part, in accordance with the provisions of the fifth section of the act of April 12, 1883 (Gen. Laws, 85), and on January 30 following he paid one thirtieth of the purchase money and one year's interest. On May 9, 1885, Lewis conveyed the south half of the section to Jane G. Torrey. At some time subsequent to the first day of August, 1885, Lewis not having made any further payment of interest, the Secretary of the State Land Board entered, on the account kept by him with Lewis, a declaration that the land was forfeited on account of the failure of Lewis to pay interest for the year 1884, and on February 16, 1886, he certified to the Commissioner of the General Land Office that the land had been forfeited and the account of Lewis canceled. After this, the section of land was again placed on the market, under the provisions of the act of April 12, 1883, and the regulations of the State land board.

On June 22, 1886, the appellant made application to purchase the south half of the section, and on July 10, 1886, the land was awarded to him on his application at two dollars per acre, and he at once paid one-thirtieth part of the purchase money. On March 5, 1886, the appellees tendered the sum due as interest for one year on the unpaid purchase money for the whole section, and this was refused on the ground that the right of Lewis or his vendee had been forfeited, and the contract to purchase canceled. The court below held that the payment of interest made by Lewis at the time he purchased, was in full of all interest due prior to January, 1885, and it is urged that this was erroneous. The purchase by Lewis was under the provisions of the fifth section of the act of April 12, 1883, which permitted actual settlers to purchase school lands which had been appraised under the first and second sections of the act of April 6,

1881, at the price fixed by that appraisement; and such purchasers were required to make a payment of one-thirtieth of the purchase money and one year's interest at the time of purchase. Such purchasers were also required to pay interest at the rate of eight per cent per annum, as provided by the act of April 6, 1881, instead of five per cent, as required of other purchasers under the act of April 12, 1883.

After making some other provisions, not material to notice, the act last named declares that "Such purchaser shall, in all other respects, conform to the provisions of this act; provided however, that any such person desiring to purchase any of said lands so appraised, shall, within six months from the time this act takes effect, file in the General Land Office his application to purchase said land, designating it, and on payment of one thirtieth of the purchase money and one year's interest," etc. As before said, Lewis paid one thirtieth of the purchase money, and interest for one year at the rate of eight per cent per annum on that unpaid at the time of his purchase. There is nothing in the act to evidence an intention that such a purchaser should pay anything for the use of the land prior to the time of his purchase.

It required " one year's interest " to be paid at the time of the purchase, and the statute declares that, "interest is the compensation allowed by law or fixed by the parties in a contract for the use, forbearance or detention of money." (Revised Statutes, 2972.) The relation of debtor and creditor must in some way be created before any one can be entitled to interest, for until this is so, one can not be said to use or detain money for which another is entitled to compensation, or that there is forbearance on the part of one to receive from another money to which he is entitled. The payment of interest may be required at the time the debtor is first permitted to use or detain the money of the creditor, at fixed periods before maturity of the debt or at maturity, and the right to interest will continue to exist after maturity of the debt so long as the creditor by forbearance permits the money to remain unpaid.

Actual settlers have always been favored by the laws of this State, and the act of April 12, 1883, continuing the same policy that had been before pursued gave to such persons a preference right to buy, which continued for six months after the passage of the act. No instance can be found in the legislation of this State in which the actual settler has been required to compen-

sate the State for the use of public lands before the time he be-
came the purchaser, and it is not to be presumed that it was the
intention, by the act of April 12, 1883, to reverse this policy and
to require such persons to pay for the use of land prior to purchase, from the simple fact that one year's interest was required
to be paid at the time of the purchase. If the intention had
been to require compensation for the use of the land, prior to
purchase, in the nature of rent, it would have been easy to say
so; and that such intention existed can not be presumed from
the sole fact that one year's interest was required to be paid in
advance.

The act of April 12, 1883, provided for leasing lands for stock
and ranch purposes and left the manner of the payment of rent
to be regulated by the land board. The act of April 1, 1887, also
provides for the lease of public lands, and requires that "the
lessee shall pay an annual *rental* of four cents an acre for all
pasture lands leased, which *rental* shall be paid each year in
advance." (General Laws, 87.)

The Legislature must be presumed to have understood the
meaning of words used in laws enacted by it, and especially so
when a word or words used had been expressly defined by statute. When the word "interest" was used, there being nothing
in the context to evidence a contrary intention, it must be presumed that the Legislature intended it to have the meaning which
general usage, as well as the statutory definition gives, and not
that it used it in the sense of rent or compensation for the use of
land before the date of purchase, or a part of the principal of the
purchase money. Under the theory of the appellant, it would be
necessary for Lewis or his vendee to pay interest for thirty-one
years on a debt which would not exist for a period longer than
thirty years.

The payment of interest by all such purchasers as Lewis, except for the first year, was regulated by the ninth section of the
act of April 12, 1883, which provided that interest should be
payable on or before the first day of March of each year. The
interest year would be computed from the date of the purchase,
whether the interest was paid in advance or not; but the interest for any given year was not required to be paid until
March 1 of each year, although the interest year might expire
before that time.

The court below correctly held that the payment of interest
for one year at the time the purchase was made satisfied all

claim for interest for one year from that date, and that the declaration of forfeiture on account of the non payment of other interest prior to March 1, 1886, was unauthorized. The second payment of interest was due at the end of the second year, computed from the date of purchase; but, under the act of April 12, 1883, Lewis or his vendee had until the first day of March, 1886, to pay it. Before that time arrived, the Legislature, through the act of February 16, 1885, provided that "if the payment of annual instalments of interest be made by the first day of August succeeding the first day of March, when the same became due, then no forfeiture shall result or be taken for such delay in such payment." (General Laws 1885, 14.)

If this legislation be not forbidden by the Constitution, it is evident that no ground of forfeiture existed; for the interest due on March 1, 1886, was tendered on the fifth of that month. It is contended that the act of February 16, 1885, in so far as we have quoted it, is violative of that provision of the Constitution which forbids retroactive legislation and also of section 4, article 7, which declares that "The Legislature shall have no power to grant any relief to purchasers" of lands set apart to the public free school fund. It is evident that the law is not forbidden by section 16, article 1, of the Constitution, and we are not prepared to say that it is in violation of section 4, article 7. A statute which would, if given effect, free the purchaser from obligation to comply with his contract to pay principal or interest, would doubtless violate the section of the Constitution last referred to. Such, however, is not the effect of that part of the act of February 16, 1885, which we have quoted.

Notwithstanding that statute, the obligation of the purchaser to pay both principal and interest, in strict accordance with his contract and the law under which it was made, continued; and the State, like any other creditor, could enforce all rights and claims which would ordinarily legally grow out of the fact that the interest was not paid on the very day it became due and payable. The statute did not release the purchaser from any obligation arising from the contract or its breach. The effect of the statute was, while leaving the purchaser fully bound, to suspend the right which the State had to cancel the contract and thus to forfeit the right of the purchaser to have the executory contract carried out, if the annual interest was not paid on or before the first day of March. The forfeiture of the right

to have the land would necessarily free the purchaser from obligation to pay for it.

Cases may arise in which it would be, in a popular sense, a relief to a purchaser to have his contract canceled; as when lands contracted for are not worth and would not sell for as much as the balance due under the contract, and in such cases it could not be said that the State by suspending for a time its right to forfeit, had given relief to purchasers. In times of great financial depression, or in cases of public calamity, affecting a part or the whole of the State, purchasers of school lands may be unable promptly to pay annual interest, and in such cases it may be to the interest of the State and of the school fund to suspend for a time the right to forfeit school lands on account of the failure of purchasers to pay interest on the day it becomes due; and if the Legislature does so we are not prepared to say that its act is violative of the Constitution. In the case before us, no forfeiture had occurred when the act was passed, and relying on its validity the purchaser, recognizing the fact that the law did not relieve him from obligations to pay the interest on the first day of March, tendered the payment on the fifth of that month.

The rule is that, a law will not be declared unconstitutional unless it is clearly so, and in cases of doubt it will be held valid. The opinion of the Legislature of its constitutional power is entitled to great weight; and, if it had not clearly the power to suspend for a time the right of the State to forfeit the right of purchasers of schools lands, the question is, to say the least, a matter of such doubt as to render it improper for this court to declare its act unconstitutional.

The interest was tendered before the time expired, within which, under the act, the interest was required to be paid, and we are of the opinion that the land was not subject to resale at the time the appellant attempted to purchase it.

Proof of tender made on March 5, 1886, was admissible under the proceedings.

We find no error in the judgment of the court below and it will be affirmed.

*Affirmed.*

Opinion delivered June 24, 1887.