ISLAND CITY SAVINGS BANK ET AL. v. P. H. DOWLEARN.

No. 962. Decided February 11, 1901.

**1. School Land—Purchase—Default—Forfeiture.**

While the State has the right to declare a forfeiture for the nonpayment of interest under executory contracts for purchase of school land, it can only be done by an officer authorized by law to assert the State's right, and no officer has power to declare a forfeiture except at the time and in the manner provided by law. (Pp. 388, 389.)

**2. Same—Entry of Forfeiture.**

Interest falling due on March 1, 1891, the law in force (Act 1891, Twenty-second Legislature, page 180) extended the time of payment without penalty to the first day of the succeeding November, and with payment of a penalty to the first day of the then succeeding April; until after this last date the Commissioner of the General Land Office had no power to enter a forfeiture of the purchase for such default in payment, and his act in making such entry on January 20, 1892, had no effect upon the purchaser's title, though the latter did not tender payment within the time allowed. (Pp. 386-389.)

**3. Same—Resale.**

The failure to pay interest and penalty by April 1, 1892, worked no forfeiture of the purchaser's rights till the entry of forfeiture was lawfully made by the Com-

missioner, and such entry could not be lawfully made until after that date. The purchaser whose subsequent tender of the amount due the Commissioner had refused because of such premature declaration of forfeiture, could recover the land from a second purchaser to whom the Commissioner had sold it as forfeited. The second sale by the Commissioner before legal declaration of forfeiture was without authority. (P. 389.)

**4. Purchasers of School Land—Relief of—Constitutional Law.**

The laws extending time for payments of interest on contracts for purchase of school land were to prevent impairment of the school fund and not in the nature of relief to the purchasers nor prohibited as such by article 7, section 4, of the Constitution. Barker v. Torrey, 69 Texas, 7. (P. 389.)

ERROR to the Court of Civil Appeals for the First District, in an appeal from De Witt County.

The bank sued Dowlearn, and defendant had judgment. Plaintiff appealed and on affirmance obtained writ of error.

*Proctors,* for plaintiffs in error.—A construction of the Act of 1887 which causes the forfeiture provision of said act to apply to a contract of purchase under the Act of 1883, as to which purchase by the Act of 1885 the provision of forfeiture had been abrogated, renders the Act of 1887 unconstitutional as a law impairing the obligation of a contract, and, therefore, within the inhibition of subdivision 1 of section 10 of article 1 of the Constitution of the United States, and also of section 16 of article 1 of the Constitution of the State of Texas.

The general Act of April 1, 1887, has no application to purchases made under the Act of 1883 or any prior laws.

This Act of April 1, 1887, having been fully construed by the Texas courts prior to the decision of Fristoe v. Blum, the construction of the statute had become a rule of property, and such construction should not have been departed from save upon the gravest necessity.

Not only did these decisions prior to Fristoe v. Blum plainly impose the rule of stare decisis upon contracts of such nature as this, but also said prior decisions amounted to a construction by the courts of the State of the State's contract with its citizen, and the latter having relied upon such construction and having acted upon the faith thereof, the State should not claim a different construction as to this particular contract.

If any right of forfeiture existed in this contract made under the law of 1883, it was the particular right of forfeiture which was defined by the statute in force at the time the forfeiture was taken. Under this statute no right of forfeiture for default in the installment of interest for the year 1890 could be taken prior to April 1, 1892, and the attempted forfeiture on January 20, 1892, was premature and wholly without legal warrant.

*John H. Bailey* and *Sam C. Lackey,* for defendant in error.—The forfeiture of Crain's contract of purchase taken on January 20, 1892,

by the Commissioner of General Land Office was not premature, but was valid and effective to deprive said Crain and his vendees of all interest in the land here in controversy, for two reasons, viz: (1) Because the Act of April 12, 1883, under which Crain bought, together with the amendment thereto of February 16, 1885, expressly required said Commissioner to do what he did, and the State's right to a summary forfeiture upon his default in payment of interest due for 1890 was not destroyed, nor intended by our Legislature to be destroyed, by the Act of February 23, 1885; and (2) because if said Act of February 23, 1885, be properly construed as intended to destroy the State's right of a summary forfeiture in case Crain failed to pay 1890 interest within the time required by the Act of 1883, under which he bought, and its amendment of February 16, 1885, said Act of February 23, 1885, was void, because in direct violation of section 4 of article 7 of our State Constitution, in that it gave to Crain and other purchasers similarly situated some "relief" of substantive value to him and them.

Even conceding that the forfeiture of January 20, 1892, was premature and therefore without force or effect in law upon Crain's rights, nevertheless it is true that plaintiff in error has wholly failed to show any title to the land in controversy for the reason that no indorsement by the Land Commissioner upon Crain's obligation, or in the books of the General Land Office, was necessary to effect a forfeiture, even under the Act of 1887 and its amendments; and the attempted or imperfect tender of February 15, 1892, did not preserve Crain's rights as a purchaser under the law of 1883.

We of course concede the correctness of the general proposition urged by our opponents, that when a tender is refused upon specific grounds assigned therefor at the time of tender made, any and all other objections to the sufficiency of such tender must be considered as waived by the creditor—this as between individuals. But, such a principle certainly can not be applied as against a sovereign State, which can and does act wholly by and through agents or servants of strictly limited and closely defined powers. To hold otherwise would be equivalent to holding that such State, Texas for example, may be estopped by the illegal or unauthorized act of its agents and servants—a proposition utterly untenable under all of the authorities. In other words, we think it beyond controversy that Crain was required to take notice of then existing laws requiring payment of both interest and penalty prior to April 1, 1892, and that he tendered the interest only at his own peril. He was likewise affected with legal notice of the State Treasurer's want of power to bind or estop the State by any statement he might make in declining the defective tender. That the State can not be estopped is distinctly decided in these cases, to wit: Saunders v. Hart, 57 Texas, 8; Mech. on Pub. Off., sec. 924; Land Co. v. State, 68 Texas, 553; Railway v. State, 81 Texas, 572; United States v. Insley, 130 U. S., 265; Railway v. State, 41 S. W.

Rep., 163; Willoughby v. Townsend, 53 S. W. Rep., 582. Adopting the language used by this court in the case last cited, we beg to suggest that "it was the duty of the State Treasurer to reject Crain's defective tender, and whether he assigned the proper reason or not is immaterial to this controversy."

We submit that the duty laid upon the Land Commissioner by this Act of 1891 was so far clerical only, that defendant in error, for example, having settled upon the land here involved, in good faith and with the desire to buy the land from the State, after April 1, 1892, might have compelled the Land Commissioner to enforce the forfeiture against Crain by original mandamus proceedings in this court against that official, and then have compelled the Land Commissioner to accept his offer for the land, such offer being in strict compliance with then existing laws providing for the sale of such forfeited lands.

Crain's failure to pay prior to April 2, 1892, both interest for 1890 and 20 per cent penalty thereon, was the vital fundamental fact involved in the course of dealing between himself and the State, his vendor; the action of the Land Commissioner was at best wholly evidential in its nature and could confer on the State no right which had not already accrued to it by reason of, and eo instanti upon, Crain's final default on April 1, 1892.

We also submit that the State, as a sovereign power dealing with one of her own citizens, could neither lose nor be estopped as to any of its rights growing out of Crain's continued default, simply by reason of the inability or even the willful neglect of its servant, the Land Commissioner, to do the purely clerical act called for on his part by this law of 1891—this, for the same reasons and on the same authorities hereinabove stated and cited in support of our proposition that the defective tender of February 15, 1892, preserved none of Crain's rights and in no way bound or affected the State's rights.

As equity treats as done that which ought in good conscience to have been done, so this court should treat that as done in favor of and on behalf of the State which its laws required to be done for it by its agent and servant, the Land Commissioner.

BROWN, ASSOCIATE JUSTICE.—The subject of controversy in this suit is a fractional section of land belonging to the free school fund of the State of Texas, situated in De Witt County, which was regularly upon the market on January —, 1884, when, under the law of 1883, W. H. Crain purchased it, complying with the terms of the law by giving his obligation and making the first payment. On December 31, 1895, the title vested in the Island City Savings Bank and the members of the firm of Ball, Hutchings & Co. through a regular chain of transfer from Crain.

"The interest upon said obligation or note of said Crain evidencing the balance of the purchase money of said land in controversy, bought by him as stated in finding first herein, was duly paid by the several

respective holders of title under him for the years 1884 to 1889, both inclusive. The installment of interest accruing for 1890 on said obligation or note, being the installment which under the terms of said obligation was payable on or before March 1, 1891, had not been paid on January 20, 1892, and upon said last mentioned date the Commissioner of the General Land Office indorsed on said obligation 'land forfeited,' and on the same date caused an entry to that effect to be made in the account kept in the treasurer's office in the name of the purchaser, W. H. Crain, and because of said declaration of forfeiture, the commissioners of the General Land Office have continuously since the date of said declaration, refused to recognize that any right or title continued to exist under the said purchase by said Crain.

"Three proper and sufficient tenders have been made to the State Treasurer to pay—on February 15, 1892, of the amount of interest to January 1, 1891, owing upon said obligation of said W. H. Crain; and on April 3, 1895, of the amount of interest to January 1, 1895, owing upon said obligation of said Crain; and on August 16, 1897, of the amount of interest to January 1, 1897, owing on said obligation of said Crain. That these tenders were made by the agents of the holders, at the times of said tenders respectively, of the rights acquired under said purchase by said Crain, and that each and all of said tenders were refused by said Treasurer when the respective tenders were made, and in each instance the reason or ground of refusal was stated to be, 'it can not be received and applied for the reason that said account has been forfeited upon the books of this office for nonpayment of interest for 1890,' and which statement of the ground of refusal in each instance referred to the said declaration of forfeiture made by the Commissioner of the General Land Office on January 20, 1892, as aforesaid."

On August 2, 1895, the defendant in error settled upon the land and on that day filed in the General Land Office, according to law, his application to purchase the land, which was awarded to him under the provisions of the Act of April 16, 1895. The defendant in error has complied with the law in all respects. At the time of his settlement and purchase from the State, the defendant in error was aware of the condition of the title of Crain, the land being embraced in a large pasture and claimed by Crain and those who succeeded him down to and including the plaintiffs in error.

The plaintiffs in error brought suit against the defendant in error. The case was tried without a jury and a judgment was rendered in favor of defendant, which judgment was affirmed by the Court of Civil Appeals of the First District.

It has been the policy of the Legislature of this State to have the time of forfeiture of all contracts for the purchase of free school lands on account of the nonpayment of interest to occur at the same date in order to prevent confusion in the General Land Office in making the entries required by the statute, and also that there might be no

uncertainty with purchasers as to the time when their contracts might be terminated. In furtherance of this policy, the Act of April 1, 1887, "providing for the sale and lease of school and other public lands," was passed. Section 11 of that act provides: "If, upon the first day of August of any year, the interest due on any obligation remains unpaid, the Commissioner of the General Land Office shall indorse on such obligation, 'Land forfeited,' and shall cause an entry to that effect to be made on the account kept with the purchaser, and thereupon said land shall be forfeited to the State without the necessity of re-entry or judicial ascertainment, and shall revert to the particular fund to which it originally belonged and be resold under the provisions of this act or any future law." This act applied to all contracts, whether made before or after its passage, and made the time when the entry of forfeitures might be made uniform, on the first day of August of each year after the interest should become due. Fristoe v. Blum, 92 Texas, 82. In the year 1889, the Legislature amended that section of the law of 1887, using the same language, except that the time for forfeiture was fixed at the first day of January following the first day of August when the interest should become due, and a penalty of 50 per cent upon the amount of interest defaulted was prescribed, to be paid by the purchaser; and on failure to pay the interest and the penalty by the first day of the succeeding January, the contract was to be indorsed "forfeited" as required in the former statute, with the same effect. In 1891, the eleventh section of the Act of 1889 was amended to read thus: "If, upon the first day of November of any year, the interest due on any obligation remains unpaid, the purchaser shall have until the first day of April following in which to pay said interest, and for said default said purchaser shall pay twenty per cent penalty on said interest then past due; and if said purchaser shall fail to pay said past due interest and penalty on or before the first day of April, the Commissioner of the General Land Office shall indorse on said obligation 'Land forfeited' and shall cause an entry to that effect to be made on the account kept with the purchaser, and thereupon said land shall be forfeited to the State without necessity of re-entry or judicial ascertainment, and shall revert to the particular fund to which it originally belonged and be resold under the provisions of this act or any future law." This last act was in force at the time the forfeiture was entered in this case and was the only authority for the Commissioner of the Land Office to declare the land forfeited for the nonpayment of interest and the penalty.

It is manifest from the course of legislation that the State has never desired to forfeit any contract for the purchase of the free school lands, but the clause of forfeiture has been used to stimulate payment of the interest, and as a last resort to repossess the land. The State has frequently extended the time of payment and made provisions by which forfeitures already incurred might be relieved. While the State has the right to declare a forfeiture for the non-

payment of the interest under these executory contracts, it can only be done by an officer authorized by law to assert the State's right, but no officer has power to declare a forfeiture except at the time and in the manner provided by the law.

The interest, for the nonpayment of which the forfeiture in this case was declared, fell due on the first day of March, 1891, and the effect of the law just above quoted was to extend the time at which the payment might be made without penalty to the first of the succeeding November, and to extend the time of payment with penalty to the first day of the succeeding April. . At the time the Commissioner of the General Land Office entered the forfeiture upon his books and declared the land forfeited, he had no authority to do so, for the purchaser had the right to make the payment of the interest and the 20 per cent at any time before the first day of the succeeding April. The declaration of forfeiture, therefore, entered by the Commissioner was without authority and had no effect upon the title of the purchaser.

It is claimed, however, that a failure to pay the interest and the 20 per cent penalty on or before the first day of April worked a forfeiture of itself, and that the subsequent sale of the land was valid. The language of the act is plain and explicit as to the time when the forfeiture shall occur. The Commissioner had no power to enter the words "Lands forfeited" upon the obligation until after the first day of April, 1892, and no forfeiture could occur until that entry was lawfully made. The conclusion is irresistible that no declaration of forfeiture could be lawfully entered at the time this was made and that no forfeiture could occur until the entry required by law was lawfully made in the Land Office after the first day of April, 1892. The contract not being lawfully forfeited, the rights of the plaintiffs remained *intact* and they had the right to pay up the past due interest and such penalties as were required by law. The sale to the defendant was without authority on the part of the Land Commissioner and conferred no title on him.

Defendant in error claims that the laws which extended the time for payment of interest on the contracts for purchase of free school lands were in the nature of relief to the purchasers and in conflict with the following provision of article 7, section 4, of the Constitution: "The lands herein set apart for the public free school fund shall be sold under such regulations, at such times, and on such terms as may be prescribed by law; and the Legislature shall not have power to grant any relief to purchasers thereof." This court has held that such a law is not obnoxious to the constitutional inhibition. Barker v. Torrey, 69 Texas, 7. The object of the convention was to prevent the impairment of the school fund. The act in question had the effect to protect and secure that fund. It was an act of policy on the part of the State by which it would induce the purchaser to carry out the contract which was favorable to the school fund.

The trial court erred in entering judgment for the defendant. It

is therefore ordered that the judgment of the District Court and Court of Civil Appeals be reversed, and that judgment here be rendered for the plaintiffs in error that they recover the land described in their petition of the defendant, together with all costs of suit. In accordance with the agreement of the parties made in trial court, this cause is remanded for trial of the issue of valuable improvements made in good faith by defendant in error.