J. B. Willoughby v. J. J. Terrell, Commissioner of the General Land Office, et al.

No. 1452. Decided February 15, 1906.

**1.—School Land—Lease—Partial Payment.**

The statute on leasing school land recognizes no partial payment of annual rents. The full rent for one year must be paid in advance within sixty days from the time the annual rent falls due, or the lease be subject to cancellation after that date. (P. 490.)

**2.—Same—Cancellation.**

The provision, in the Act of April 9, 1901, section 5, that on default in payment of rent the Commissioner "shall cancel said lease and immediately notify the county clerk * * * and the land shall be on the market for sale for sixty days after said cancellation," implies that the lease is not, ipso facto, cancelled by such default, but that it was the duty of the Commissioner, by some official action, to declare the forfeiture, and that, until this was done the land was not upon the market for sale. (P. 490.)

**3.—Same—Manner of Cancellation.**

The Act of April 9, 1901, was amendatory of the former law (Batts' Civ. Stat., article 4218v) and repealed the same only so far as in conflict with it; it seems that the provision of the former law as to the manner in which the Commissioner should proceed in declaring the cancellation could still stand; but if not, the intention that the Commissioner should take some official action formally declaring in writing the cancellation of the lease appears from the amendment itself. (P. 490.)

**4.—Same—Case Stated.**

A consolidation and extension of several leases of school land having been found to be invalid under the rulings of the Supreme Court, the Commissioner, treating the original leases as in force applied upon them the payments made under the invalid consolidated lease, thereby effecting a partial payment of the annual rent falling due under the original lease upon four sections of the land, on April 8, 1902, and covering such rent to July 28, of the same year. A purchaser applied to buy these sections on June 12, 1902; the Commissioner took no action to declare the lease forfeited, and on August 29, 1902, he accepted from the lessee payment of the balance of the rent to April 8, 1903. Held that the land was not upon the market, for want of an act declaring forfeiture by the Commissioner; and the applicant could not maintain mandamus to require the Commissioner to recognize him as purchaser. (Pp. 489–491.)

**5.—Judgment—Suit Against Tenant—State Not Bound.**

The rule that a judgment recovering title to land against a tenant in possession does not affect the landlord who was not a party applies to the

State as a lessor of public land; an applicant to purchase school land who has, in a suit against one holding it under lease from the State, had his title adjudged to be superior to defendants, acquires no rights thereby, against the State to have his application recognized as entitling him to standing as a purchaser in disregard of the lease. (P. 491.)

Original petition in the Supreme Court by Willoughby for writ of mandamus against the Commissioner of the General Land Office. Various other persons claiming an interest in the land were made parties.

*Wright & Wynn,* for relator.

*Robert V. Davidson,* Attorney-General, and *T. S. Reese,* Assistant, for respondent Terrell.

GAINES, CHIEF JUSTICE.—This is an original petition for a writ of mandamus to compel the Commissioner of the General Land Office to accept the relator as purchaser of four sections of school land lying in Schleicher County.

The petition shows that on the 12th day of June, 1902, the relator made an application to purchase each of the four sections in controversy, that each of the applications was in conformity to the requirements of the statutes, and that upon each he made the cash payment and filed his obligations for the deferred payments as required by law. It also showed that the applications were rejected by the Commissioner.

The facts upon which the Commissioner acted, as also appears by the petition, are as follows:

On the 28th day of May, 1896, the Commissioner of the General Land Office leased to T. J. Ellis, twelve sections of school land in Schleicher County for the term of ten years, beginning on the 8th day of April, next preceding, among which were the four sections in controversy. Upon this lease the rent was duly paid in advance for five consecutive years. So that on April 8, 1900, or within sixty days thereafter, the rent was paid up to April 8, 1901. Ellis, being at the time the holder of two other leases of school lands, on the 23d of July, 1900, made application to the Commissioner to consolidate and extend his leases for ten years from that date. The Commissioner granted the application and made a consolidated lease accordingly, and directed the State Treasurer to apply so much of the money which had been paid in advance on the original leases as represented the unexpired part of the current year to the rental on the new leases, and to receive in cash a sufficient sum to pay the first year's rent on the new lease. When it became apparent by the decision of this court in Ketner v. Rogan, that the consolidated lease was invalid, the Commissioner again instructed the Treasurer to apply to each of the constituent leases its prorata part of the rent which had been paid on the new lease. This paid the rent on the lease which embraced the lands in controversy up to July 28, 1902. The Commissioner treated that lease as valid although the balance of the rent for the year extending from April 8, 1902, to April 8, 1903, was not paid until the 29th day of August, 1902. We note again that in June, 1902, the relator made his application to purchase.

The statute recognizes no partial payment of rent. The full rent of one year must be paid in advance within sixty days from the time the annual rent falls due. Therefore, the lease after the lapse of sixty days from April 8, 1902, was subject to cancellation. The question is, does the failure to pay within the sixty days work ipso facto a cancellation of the lease and put the land upon the market for sale, or must the Commissioner do some act to cancel it before that result follows?

Section 5 of the act, approved April 9, 1901, contains this provision: "And when the lessee shall fail to pay his annual rental within sixty days after it becomes due, the Commissioner of the General Land Office shall cancel said lease and immediately notify the county clerk of the county in which the land, or a part thereof, is situated, of the cancellation and the date when cancelled, and the clerk shall note the date of cancellation on his lease record, and the land shall be on the market for sale for sixty days after said cancellation." (Laws, 1901, p. 296.) This provision, as we think, very clearly implies that upon the failure of the lessee to pay within sixty days, it was the duty of the Commissioner by some official action to declare the lease forfeited, and that until this was done the land was not upon the market for sale. It seems but reasonable that the lease should be formally cancelled and notice given before subjecting the land to purchase, so as to give all persons desiring to acquire the lands under the law, the equal opportunity to make application. The law in force at the time the Act of 1891 was passed, declared that: "If any lessee shall fail to pay the annual rent due in advance for any year within sixty days after such rents shall become due, the Commissioner of the General Land Office may declare such lease cancelled by a writing under his hand and seal of office, which writing shall be filed with the other papers relating to such lease, and thereupon such lease shall immediately terminate, and the lands so leased shall become subject to purchase or lease under the provisions of this chapter." (2 Batts' Civ. Stat., art. 4218v.) The Act of 1901 was supplemental to and amendatory of the previous laws, and repealed the existing statutes only in so far as they were in conflict therewith. The only change in reference to the matter in question is that the new law clearly makes. it the duty of the Commissioner to cancel the lease, and provides that he shall immediately give notice of the fact to the county clerk of the county in which the land lies. Unlike the former law, it omits to prescribe the manner in which the cancellation shall be declared. There seems to be no conflict here since all the requirements of both provisions may stand together. Therefore, we are inclined to think that in the new law it was intended that the cancellation was to be accomplished in the manner required by the old. But if not, still we think that the legislature meant that the Commissioner should take some official action and should formally declare in writing the cancellation of the lease. In Island City Savings Bank v. Dowlearn (94 Texas, 389), it was held that, although under the Act of 1891 the failure to pay interest rendered the purchase of school land subject to forfeiture, it was not in fact forfeited until the Commissioner had indorsed upon the obligation the words "land forfeited," as required by the act.

Whether, under the facts of this case, it was the duty of the Commis-

sioner to cancel the lease because the interest was not paid in full within sixty days from the 8th day of April, 1902, is a question we need not decide. It is evident he neither cancelled it nor desired to do so, and in our opinion until it was officially cancelled, the land did not come on the market for sale.

It is also alleged in the petition, and the fact is not denied in respondents' answer, that previous to the institution of this action, the relator brought an action of trespass to try title against all the parties defendant in this suit, other than the Commissioner of the General Land Office, and that in that case it was adjudged that the relator as against those parties had the superior title to the land. However, the parties in that case were holding and claiming the sections in controversy merely as tenants of the state, and it is well settled in this court that a judgment against a tenant in a suit to which the landlord is not a party and of which he has no notice, does not affect the title of the landlord. (Reed v. Allen, 56 Texas, 176; s. c. 58 Texas, 380; Stout v. Taul, 71 Texas, 438.) The state is the owner of the land and can not be estopped to deny that an applicant to purchase has not acquired a right to purchase by a suit between him and another party. If this could be done, we can not see why the lessee and a proposed purchaser might not include the state by a contract between themselves to which the state was in no manner a party.

The land not having been subject to sale when the relator applied to purchase, and neither the state nor the commissioner being affected by the adjudication alleged in the petition, the mandamus is refused.