# NOVEMBER, 1913

FRANK A. JUDKINS v. J. T. ROBISON, COMMISSIONER OF GENERAL LAND OFFICE.

No. 2567. Decided November 26, 1913.

**1.—Public Land—Forfeiture—Reinstatement—Repurchase.**

The Act of April 18, 1913, Laws, 33d Leg., ch. 160, p. 336, allowing repurchase of public land by the forfeiting purchaser on reappraisement, did not repeal article 5423, Rev. Stats., 1911, permitting his reinstatement on payment of defaulted interest. His remedies were concurrent and he could pursue either. (Pp. 7, 8.)

**2.—Same—Election of Remedies.**

The purchaser who has forfeited his rights in public land by non-payment of interest, could not be permitted to speculate on the result of pursuing his remedy by reappraisement and repurchase under the Act of April 18, 1913, and, if such appraisement proved unsatisfactory to him, abandon that remedy and apply for reinstatement under article 5423, Rev. Stats. On notifying the Land Commissioner of his desire to repurchase and procuring thereby a reappraisement for that purpose, he was held, by his election, to pursue that remedy only. (Pp. 8, 9.)

**3.—Constitutional Law—Public Lands—Relief of Purchasers.**

The Act of April 18, 1913, Laws, 33d Leg., ch. 160, p. 336, granting a forfeiting purchaser the right to repurchase the land on notice of his desire to do so and reappraisement of same, is not one of the character forbidden by article 7, section 4, of the Constitution, precluding the Legislature from granting relief to purchasers of land belonging to the public school fund. It merely grants a right of priority of purchase under a new contract, and in no way relieves him from the obligation of the former one. (Pp. 9, 10.)

**4.—Constitutional Law.**

A law must be clearly contrary to some constitutional provision, in order to justify the courts in declaring it invalid. That a merely possible effect of its operation might enable a purchaser of public land to acquire it at a less price than he was held to pay under a former contract, from which the Legislature was forbidden to relieve him, will not render unconstitutional a statute not necessarily having such result. (P. 10.)

Original application to the Supreme Court by Judkins for writ of mandamus against Robison as Commissioner of the General Land Office.

*Chas. Rogan,* for relator.

*B. F. Looney,* Attorney General, and *G. B. Smedley,* Assistant (*W. F. Ramsey,* of counsel), for respondent.

*J. M. Caldwell* also filed brief and argument for respondent, by permission of the court.

MR. JUSTICE PHILLIPS delivered the opinion of the court.

By an Act of the Thirty-third Legislature (chapter 160, page 336) it is provided, in respect to any of the public free school lands purchased from the State after January 1, 1907, and prior to January 1, 1913, on condition of settlement and residence, the sale of which may be forfeited after its enactment on account of non-payment of interest accrued before the passage of the Act, that the owner of such land at the date of the forfeiture shall have the right for a period of ninety days after notice of classification and appraisement of his land as provided by the Act, to repurchase any of such tracts, not to exceed one complement of sections, upon the terms and conditions therein prescribed. The Act provides for an appraisement of the land by the board of appraisers created for that purpose, and the privilege of the forfeiting owner to repurchase under such valuation, to be exercised according to its terms; but a distinctive feature of its provisions is that the right of such owner to repurchase is acquired only through his notification to the Commissioner of the General Land Office of his desire to repurchase the land, which is required to be given within a stipulated period. If the right of repurchase at the appraised valuation is not exercised the lands are required to be placed by the Commissioner on the market for sale as is now provided by law for the sale of leased land.

The relator was the owner of certain lands within the classification of this Act, and his purchase was duly forfeited by the Commissioner on July 12, 1913, after the passage of the Act, on account of the non-payment of interest which had accrued prior to its enactment. Thereafter on July 21, 1913, in evident pursuance of the Act, he advised the Commissioner of his desire to repurchase the lands and requested their reappraisement. They were reappraised under the Act and their value fixed by the board at $3.00 per acre, which was $1.00 per acre in excess of the price of the relator's original purchase from the State, of which appraisement he was duly notified. On October 3, 1913, in abandonment of any further attempt to repurchase under the Act, the relator sought to have his original purchase reinstated under article 5423, Revised Statutes, 1911, by application for such reinstatement and tender of all accrued interest in accordance with the provisions of that article. The Commissioner refused to receive the payment and reinstate the sale, and the purpose of this action is to compel him to do so.

The relator maintains that the Act of the Thirty-third Legislature, above referred to, providing that forfeited lands embraced within its operation may be repurchased upon the terms and conditions therein prescribed, interposes no obstacle to the right of a forfeiting owner to obtain a reinstatement of the sale of such lands under article 5423; that it worked no repeal of that statute and is but cumulative of the

remedy of reinstatement therein provided; that he was privileged to avail himself of either right; and though he had invoked the remedy of repurchase under the later Act to the extent of advising the Commissioner of his desire to repurchase and had requested and obtained a reappraisement of the land, he is yet entitled to pursue the remedy of reinstatement under the former article as imposing upon him the less onerous obligation. There is no conflict between the Act and article 5423, and we agree that the remedy of repurchase provided by the former is but cumulative of that of reinstatement afforded by the latter. But is it a sound proposition to say that in the passage of this Act the Legislature intended to afford to the forfeiting owner an opportunity of experimenting with the law for the purpose of ascertaining whether he might not obtain a new purchase of the land at a reduced valuation, and then permit him to repudiate his election and resort to the less onerous remedy if it were found that the valuation had been increased? We are unwilling to credit the Legislature with such a purpose, and, are unable, therefore, to give its enactment such an interpretation. The plainly expressed intention of the Act was to extend to forfeiting owners of the lands described a distinct and additional remedy for the reinvestiture of such title as was possessed under the original purchase from the State, a remedy which in nowise impaired that already provided in article 5423, yet is altogether inconsistent with it, and which for that reason, when once invoked, forbids resort to any other. The effect of the Act is to afford to the forfeiting owner the privilege of a reappraisement of the land and its repurchase at its new valuation. The title, however, may be reacquired under the Act only by purchase at such valuation; and this of itself precludes the idea that it may be reacquired by reinstatement under article 5423 at a possibly different valuation.

The reappraisement is obtained under the Act only in response to the forfeiting owner's notice to the Commissioner of his wish to repurchase, and the right to repurchase is likewise only so acquired. It is this notice to the Commissioner, in a word, that puts the Act in operation in the forfeiting owner's behalf. By invoking the remedy of the Act as a means for the reacquisition of the title, in the process of its reacquisition he is necessarily under every obligation imposed by its terms. If after his election to reacquire the title in this way, exercised by invoking the operation of the statute to that end, he may at will repudiate its requirements and reacquire the title by another and less onerous method, the inevitable result is to render the Act altogether useless and convert its operation into an utterly vain proceeding, since it amounts to nothing more than merely a means of obtaining a useless reappraisement of the land and its additional provisions have been enacted to no purpose if they may be disregarded and the title be reacquired upon the different terms of another statute whenever the revaluation proves unsatisfactory to the forfeiting owner. It can not be supposed that the Legislature intended that the operation of the Act should be

such as to thus deny it all effectual purpose, and such a consequence can not be indulged by the courts when there lies fairly upon its face a construction under which all of its provisions may be given full force and left in unimpaired operation for the accomplishment of its evident object. The relator having elected to pursue the remedy provided by the Act for the repurchase of the land by the notice given the Commissioner of his wish to repurchase, in virtue of which its reappraisement was had, must upon familiar principles be denied the right to now have the original sale reinstated under the previous statute.; and upon this ground is not entitled to a mandamus.

In his original petition the relator also assailed the validity of the Act referred to as being condemned by that part of section 4, article 7, of the Constitution, which provides that the Legislature shall not have power to grant any relief to purchasers of land belonging to the public free school fund. By an amended petition, however, upon which the case now rests, all attack upon the constitutionality of the Act has been withdrawn and the right to a writ of mandamus is based solely upon the ground above discussed. Since we granted the motion to file the petition for the purpose of determining the question of the constitutionality of the Act, and under the facts disclosed by the record the relator would doubtless be entitled to the mandamus if the Act be invalid, we deem it proper to here pass upon that question as well.

Under what we regard as the established and correct construction of this provision of the Constitution we do not think this enactment can be properly characterized as a relief Act. In Barker .v. Torrey, 69 Texas, 7, 48 S. W., 646, and Island City Sav. Bank v. Dowlearn, 94 Texas, 383, 60 S. W., 754, it is held that laws providing for an extension of time for the payment of the interest upon purchase obligations and suspending for such time the right of forfeiture, are not within the constitutional inhibition. If laws of that character are excluded from the contemplation of the Constitution it seems to us that the test provided necessarily is whether the Act enables the purchaser of such lands to acquire the title freed from the obligation to pay the principal and interest of his contract, or whether its necessary operation will result in a diminution of the price of the land from that fixed in the contract by the payment of which the title may be acquired, unless it be true that laws granting indulgence of a different character from that afforded in the acts involved in the cases named and other acts upheld by the decisions of this court, would come within the prohibition, which it is not necessary to here determine. The Act does not relate to any acquisition of the title except upon the full performance of the purchase obligation, as it only deals with the previous owner as a new purchaser, with his former obligation cancelled by the forfeiture of the previous sale. Nor does it involve the extension of any indulgence for the performance of the obligation. The test to be applied to it, therefore, is whether its necessary operation is to enable the previous owner to re-

acquire the land at a less price than he was obligated to pay under his former purchase. If its terms were to that effect or such were its necessary operation, we think it should be held invalid though it purported to deal with the previous owner as a stranger to the title, as such an Act would but prove an easy method to circumvent the constitutional provision. But that its terms are not to that effect and such is not its necessary operation, relieves it in our opinion of the constitutional objection.

It is a familiar maxim that a legislative Act is not to be declared unconstitutional unless it is clearly so. It is also an accepted rule that the necessary effect and operation of a statute may be considered in determining its validity; but a court is not permitted to look beyond the face of the statute to ascertain such effect and operation, since the intention of a statute is that expressed in its terms and its effect is to be determined accordingly. Unless the necessary effect and operation of this Act according to its terms is to enable the previous owner to reacquire the land at a reduced price it should be sustained, since otherwise it is not clearly unconstitutional. To declare it invalid because of a merely possible operation would involve not only the reversal of the rule that it should be upheld unless clearly unconstitutional, but would further require that we look beyond its terms to determine its effect. In such an inquiry we would enter upon the field of pure conjecture, and the unstable dependence of such a test is well demonstrated by the question here presented. This Act leaves the board of appraisers free to fix a higher valuation upon the land than the original purchase price, which higher price must be paid by the previous owner if the land be reacquired. This case is itself an instance where the price was in fact increased. Its necessary operation is clearly, therefore, not to diminish the price at which the land may be purchased. Yet to hold the Act invalid upon the ground that its possible operation will be to reduce the price we would be compelled to assume that such will be the result, though not a necessary effect, and when it is not improbable that its operation will serve to increase the price. The consequence would be the condemnation of an Act of the legislative department of the government not because of any infirmity apparent upon its face, nor because of any conflict between the Constitution and the law as written, but in obedience to a mere theory in respect to its operation, speculative in character and uncertain of fulfillment. Not many statutes would withstand so exact and yet so variable a test, as most of them are capable of abusive or perversive administration. The only safe or just rule for courts to follow, therefore, is that which determines the validity of a law according to its written words and its necessary effect, as distinguished from an unexpressed purpose or a possible operation. Tested either by its provisions or its necessary effect the Act is not violative of the constitutional provision. We think that the Act at best only gives the previous owner the preference right to repurchase the land,

and under the established holding of this court a statute of that character is not prohibited by the Constitution. Glasgow v. Terrell, 100 Texas, 581, 102 S. W., 98.

The writ of mandamus is refused.

# JUNE, 1915

### Ex Parte A. H. Mitchell.

#### No. 2633. Decided June 23, 1915.*

**1.—Constitutional Law—Pool Halls.**

The Act of March 31, 1913, Laws, 33d Leg., ch. 74, p. 136, prohibiting the keeping of pool or billiard halls in territory where the voters should elect to put such law in operation, is unconstitutional and void; and one arrested for violating it is entitled to discharge on habeas corpus. State v. Swisher, 17 Texas, 441, followed. (Pp. 12, 13.)

**2.—Same—Delegating Legislative Power.**

The Legislature, having the power of enacting laws imposed on it by the Constitution, can not delegate that power to the voters of a limited territory by authorizing them to adopt and put in force by popular vote therein a law not otherwise operative. (Pp. 12, 13.)

**3.—Same—Suspending Laws.**

The exercise of the power of suspending laws, except by the Legislature, is prohibited by the Constitution (art. 1, sec. 28). This renders invalid the delegating to the voters of a restricted territory, except where the Constitution specially authorizes it, the power to adopt, by local option election, a law prohibiting in such territory an occupation licensed by the general laws of the State, it being a suspension of such general laws by a power other than the Legislature. (P. 13.)

**4.—Same—Dissenting Opinion.**

Mr. Justice Hawkins, dissenting, maintains the constitutionality of the pool hall law in question. (P. 13.)

Original proceeding in the Supreme Court on writ of habeas corpus obtained by the relator against the sheriff of McLennan County. Mitchell

---

*NOTE BY REPORTER.—This case was not reported in previous volumes because of the announcement that the judges would subsequently file opinions therein more fully stating their views. A contrary ruling on the precise question had previously been made by the Court of Criminal Appeals (Ex parte Francis, 72 Texas Crim., 304, 165 S. W., 147). That court has since receded from the view and conformed its rulings to those of the Supreme Court (Lyle v. State, 80 Texas Crim., 606, 193 S. W., 680). The same question is involved in another case pending in the Supreme Court, and it is assumed that if fuller discussion of the matter by this court is deemed necessary, it would be made therein, and not by way of supplement to these opinions, and that these should now be reported.

was arrested under commitment for contempt of court, in operating a pool hall in a precinct of that county in which the Act of the Thirty-third Legislature here in question had been adopted by local vote, and he had been, under authority of such Act, enjoined by the court from so doing.