## STATE v. TIDEWATER ASSOCIATED OIL CO. et al.
### No. 11289.

Court of Civil Appeals of Texas. Galveston.
Jan. 22, 1942.

Rehearing Denied Feb. 12, 1942.

Gerald C. Mann, Atty. Gen., Glenn L. Lewis, G. W. Barcus, and Peter Maniscalco, Asst. Attys. Gen., and Scott Gaines, of Austin, and Robert E. Kepke, Former Asst. Atty. Gen., of Houston, for appellant.

Y. P. Broome, of Tulsa, Okl., Powell, Rauhut & Gideon and Black, Graves & Stayton, all of Austin, for appellee Tidewater Associated Oil Co. and others.

GRAVES, Justice.

This appeal is from a judgment of the 53rd District Court of Travis County, sitting without a jury, denying the State a recovery against the Tidewater Associated Oil Company and its associate owners, of any part of the $178.321 it sought for certain $2 per acre down and $2 per acre annual payments it claimed to be owing them, under the provisions of Chapter 83, Acts of 1917, Regular Session, particularly Section 7 thereof, Vernon's Ann.Civ.St. art. 5344, as accrued and unpaid rentals on University lands.

The money was alleged to be due the permanent fund of the University of Texas under oil lease No. 11,757, issued originally to the appellees' predecessor in title on March 17, 1927, on some 6,940 acres of University lands, which lease, however, on this trial, was cancelled by the court as to all such lands, except a certain 80 acres, upon which alone paying oil and gas had been discovered and produced—that is, the east ½ of the northwest ¼ of Section 39, Block 30, in Crane County.

In addition to the cancellation of the entire lease, the State sought the aggregate sum stated as rental on all the lands described therein, inclusive of the producing 80 acres, for the entire 13 years they had been so held by the appellees—the description of which, together with apportionment of amounts as against each of the appellees, appears in an exhibit appended hereto.[1]

All the facts below having been undisputed as well as stated by written stipulation, the sole issue of law presented here is simply whether the appellees were legally required by the statute so invoked against them to make the $2 claimed rental payments to the State, in addition to the royalties in manner and form as called for in

---

[1] Exhibit

The lands included in Lease No. 11,757, are these:

"(1) Sections 2, 3, 8 and 9, Block 56, Crockett County, Texas.

(2) The north one-half of Sections 9, 10, 15 and 16, Block 32, Crockett County, Texas.

(3) The South one-half of Section 36, Block 4, Upton County, Texas.

(4) Section 2, Block 5, Upton County, Texas.

(5) Section 1, Block 5, Upton County, Texas.

(6) The North one-half of Section 36, Block 4, Upton County, Texas.

(7) Section 35, Block 4, Upton County, Texas.

(8) The South one-half of the northwest ¼ of Section 10, Block 48, Reagan County, Texas.

(9) The East one-half of the northwest ¼ of Section 39, Block 30, Crane County, Texas.

(10) The west one-half of the northeast ¼ of Section 26, Block 30, Crane County, Texas."

The proportionate parts of the total $178,321.00 sought, based upon their respective interests in such lands, as declared upon against the several appellees were as follows:

"against the Tidewater Associated Oil Company, the sum of $106,779.40, against Darby Petroleum Corporation and the Tidewater Associated Oil Company, jointly and severally, the sum of $67,233.40; against M. H. Reed, the sum of $2,178.80, and against James R. Gahan the sum of $2,129.40."

their lease—all of which prescribed royalties had admittedly been duly paid on this producing 80 acres—for the 13-year period from March 17, 1927, the date of the lease involved, until December 30, 1940, the date of this appealed from judgment.

The appellant contends:

"1. That under the provisions of the Act of 1917, it acquired the vested right to receive the $2.00 payments therein provided for, and that the permittees assumed the obligation to make such payments.

"2. That its right to receive these payments and the claimed obligation of the appellees to make same was in no way affected by Chapter 71 or by Chapter 143, Acts of 1925, Vernon's Ann.St. art. 5341b, or by any other statute properly construed.

"3. That if Chapter 71, or Chapter 143, or any other statute, is properly to be construed as attempting to relieve the appellees from making said $2.00 payments, said legislation is unconstitutional, being violative of the Constitution of Texas [Vernon's Ann.St.] Article 7, Sections 12 and 15, and Article 3, Sections 51, 53 and 55."

The appellees contend:

"1. Under the Mineral Permit Act of 1917, properly construed, the obligation to make the $2.00 payments was imposed only on those who elected to do development-work under their permits (without obligation so to do), and who discovered oil in paying-quantities in the course of development, and who then elected to apply for and receive leases. The obligation to make the payments applied, not to permittees, but only to lessees—only to those who, by the doing of development-work that they were not obligated to do and by discovering oil in paying quantities, had become entitled to receive leases and had elected to apply for and accept leases.

"2. That Chapter 71 of the Acts of 1925 and Chapter 142 [143] amending Chapter 71, and the Relinquishment Act of 1919, by plain and express language, clearly relieved the appellees from making the $2.00 payments under the lease that was issued to them on March 17, 1927. This legislation became effective in their favor and in favor of all other persons similarly situated before any development-work was done and at a time when they rested under no obligation to prospect for and discover oil and gas and no obligation to accept a lease if they should discover oil or gas.

"3. That the legislation referred to, properly construed and applied, is clearly constitutional."

From these two repugnant constructions thereof, obviously the initial question posed for this court is whether the Mineral Permit Act of 1917, Chapter 83, Regular Session Acts, 1917, especially Section 7 thereof, imposed the legal obligation upon the appellees either as permittees or lessees to make such $2 rental payments, vel non:

If it did, just as obviously that legal visitation rode unimpaired all through the duration of these transactions over the 13-year period in question, irrespective of Chapters 71 and 143 of the Acts of 1925, and the Relinquishment Act of 1919, Chapter 81, General Laws of the Second Called Session of the 36th Legislature, Vernon's Ann.Civ.St. arts. 5368, 5369 et seq.

If it did not operate so absolutely, but did impose such an obligation only upon succeeding lessees—as contradistinguished from antecedent permittees—who, under their permits, should first voluntarily develop, discover oil in paying quantities upon, and thereafter formally lease such lands, then only do the Acts so invoked by the appellees become material, and raise for determination the secondary inquiry as to whether or not any of those Acts validly eliminated, in advance of their having legally incurred them, the obligations that otherwise would have thus been imposed upon the appellees, under cited Section 7, Chapter 83, of the 1917 Act.

In developing its points, the State ably urges that none of the cited Acts relied upon by the appellees as encompassing relinquishments in their favor, nor Chapter 6, Acts of 1921, Regular Session, nor any other Act passed since the enactment of Chapter 83, Acts of 1917, had by due appraisement any such extinguishing effect; and, if any one of them requires such a construction, ipso facto, it is brought into bas-relief as being in plain contravention of one or more of the constitutional inhibitions it relies upon, as enumerated supra.

All of the tracts here involved as constituting the subject-matter of this lease No. 11,757 were such University lands as appellant alleged them to be, they were scattered widely over the four Counties of Crockett, Upton, Crane, and Reagan, and all the preceding permits and succeeding lease thereon had been issued pursuant to Section 7, Chapter 83, of the Mineral Permit Act.

Meanwhile the permits had been combined, but no drilling for nor discovery of oil had occurred under any of them, nor under Lease No. 11,757 itself, at the time of the enactment of Chapters 71 and 143, Acts of 1925, or 81, Acts of 1919 (the Relinquishment Act), or of any other legislation claimed by the appellees to have had such extinguishing legal effect in their favor; indeed, the first and only oil ever discovered on any one of the tracts covered by the combined permits and the Lease was discovered in March of 1927 on the 80 acres in Crane County, being the east ½ of the northwest ¼ of Section 39, Block 30, which belonged to appellee Tidewater Associated Oil Company, its lease as to which had been issued by virtue of Permit No. 11,063.

This court is unable to see eye to eye with appellant's absolutism in the construction of this Mineral Permit Act of 1917, being rather constrained to agree with the learned trial court in substantially accepting the appellees' contrary interpretation of its intended objective and meaning.

In other words, while undisputedly the appellees apparently jockeyed with these entire 6,940 acres of lands under their combined permits and ensuing lease for the 13 years indicated supra, without having yielded up any other return to the State thereon than the small original permit fees, perhaps, and the succeeding royalties under the lease after the discovery of paying oil on the 80 acres, all that merely gives rise to the justiciary question of whether or not it was their legal right to do so. Appellant does not, in the opinion of this court, demonstrate that such was not their privilege under the law as written, if they chose to exercise it, as they did.

It would be going beyond the requirements for this opinion to suggest that the State need not have indulged that long course of action, if it trenched upon the public interest, but might have sought at some time during such impounded period the cancellation of the lease that was awarded it in this proceeding, with the acquiescence, at least, of these appellees.

In addition to the constitutional provisions and the statutes, as cited supra by one or the others of the parties here, appellant relies as authority for its stated contentions upon these declarations of our Texas Courts and public officers, among others: Thiesen v. Robison, 117 Tex. 489, 8 S.W.2d 646; Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265, 272; Little v. Childress, Tex.Com.App., 17 S.W. 2d 786; Opinion of Attorney General Cureton, dated January 15, 1920, recorded at pages 266–271 of the printed Reports of the Attorney General for the biennium 1918–1920.

As applied to the facts, none of these authorities are thought to sustainably conclude the questions here under review in appellant's favor; contrarily, at least some of them are considered as lending support to the opposing constructions.

■ In the first place they do not, as this Court reads the Mineral Permit Act in its entirety, demonstrate that such statute imposed upon permittees thereunder any obligation during their status as such either to develop the lands for oil or gas or to make the two-dollar payments here involved, since the Act merely conferred upon permittees the "exclusive right to prospect for and develop petroleum and natural gas during the 'life' or 'term' of the permit", and required the $2 per acre payments to be made by lessees only.

That is, it plainly provides that permittees were given the right or privilege but not the bounden duty to develop the minerals during the life or term of the permit, as well as the further and contingent privileges of thereafter applying for and obtaining a lease upon the land, on specified conditions, when they had first developed the minerals in paying quantities thereon; hence no obligation nor legal duty he could not escape—so long as he was in that relationship only—was imposed upon a permittee.

So that, conceding that the issuance of a permit amounted to a sale in deference to appellant's contention, still that falls far short of a holding that the permittee was obligated or in duty bound to go on and develop the lands and get such a lease upon them, which is the point at issue here. See Theison v. Robison, supra, Gulf Production Co. v. Continental Oil Co., Tex. Sup., 132 S.W.2d 553, Judkins v. Robison, 109 Tex. 6, 160 S.W. 955.

There was, therefore, under the undisputed facts here obtaining, if this construction of the Mineral Permit Statute be sound, no obligation on these appellees either to develop these lands or to make the $2 per acre payments thereon, at the time of the enactment of the cited statutes invoked by them as relieving them of any subsequent requirement to make such pay-

ments. Merrill, Covenants Implied in Oil and Gas Leases, 2 Ed., page 60; 2 Summers, Oil and Gas, Perm.Ed., § 397, pp. 311–332; and West's Ex'rs v. Cameron County, Tex.Com.App., 14 S.W.2d 836.

■ In recurrence to Chapters 71 and 143 of the Acts of 1925, as well as the Relinquishment Act of 1919, it seems to this court reasonably clear that jointly and severally they did in express language have the effect of relieving these appellees from making the $2 payments under the lease issued to them upon these lands on March 17, 1927; this for the main reason that this lagniappe legislation, by the sequence of events, became effective in their favor about two years before any development work whatever was done by them upon any of these lands, and at a time when, under preceding conclusions, they rested under no obligations either to prospect for and develop oil on any of these lands, or to apply for and accept a lease upon any of them, should they perchance discover any such minerals thereon.

■ Neither is it thought that Section 14 of Chapter 71, Acts of 1925, as amended by Chapter 143, Acts of 1925, offends any of the constitutional provisions so leveled against it by the appellant; the legal effect of this amended Act was not to release these appellees as lessees of these lands from the obligations to make the $2 payments here in question, nor to thereby grant them relief from their existing contracts of sale, or any other obligation to the State, as appellant contends; for the simple reason that, as already determined, no such obligations at that time rested upon them, nor did they even then occupy the status of being lessees.

Wherefore, the constitutional questions so raised by the State are considered to have become purely academic, because they are based upon an untenable construction of the Mineral Permit Act, as hereinbefore indicated.

■ Since this legislation was enacted in March of 1925, whereas the development work was neither done in this instance nor the consequent lease issued thereon until 1927, it is obvious that these constitutional objections do not apply. Judkins v. Robison, 109 Tex. 6, 160 S.W. 955; Barker v. Torrey, 69 Tex. 7, 11, 4 S.W. 646; Rhoads Drilling Co. v. Allred, 123 Tex. 229, 70 S.W.2d 576; and Mound Oil Co. v. Terrell, 99 Tex. 625, 92 S.W. 451.

It follows from these conclusions that the trial court's judgment should be affirmed; it will be so ordered.

Affirmed.