BELL v. C. J. GERLACH & BRO. (No. 250.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 28, 1917. On Motion for Rehearing, Dec. 12, 1917.)

1. INTEREST ⬤⟱1—KINDS—DEFINITIONS.

Interest is of three kinds, conventional interest, fixed by the parties in the contract, legal interest, which is allowed by law when the parties have not agreed upon any particular rate, and interest which is allowed as damages for the detention of money.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interest.]

2. COURTS ⬤⟱169(4)—JURISDICTION OF COUNTY COURT—CONSTITUTION—INTEREST.

The language of Const. art. 5, § 16, providing that the county court shall have concurrent jurisdiction with the district court when the matter in controversy shall exceed $500 and not exceed $1,000, "exclusive of interest," does not apply, where the interest is given as part of the damages, but only where it is expressly given by statute.

3. COURTS ⬤⟱169(4)—JURISDICTION OF COUNTY COURT—ACTION FOR MONEY—INTEREST—CONSTITUTION AND STATUTE.

Under Const. art. 5, § 16, providing that the county court shall have concurrent jurisdiction with the district court when the matter in controversy shall exceed $500 and not exceed $1,000, exclusive of interest, the county court had no jurisdiction of suit by the purchasers of corporate stock for $1,000 on the oral or written agreement of defendant to take such stock off their hands at the end of a year if they were not satisfied, the interest prayed for by plaintiffs being merely damages for the detention of money, for which the legal rate of interest is merely used as the measure of damages; the contract not coming within Vernon's Sayles' Texas Civil Statutes 1914, art. 4979, providing that the parties to any written contract may agree to and stipulate for any rate of interest not exceeding 10 per cent. per annum on the amount of the contract.

On Motion for Rehearing.

4. COURTS ⬤⟱169(4)—JURISDICTION OF COUNTY COURT—WRITTEN CONTRACT—CONTRACT BY AGENT.

The mere fact that an agent had authority in writing to make such a contract would not make a written contract under Vernon's Sayles' Ann. Civ. St. 1914, art. 4979.

Appeal from Trinity County Court; C. M. McKinnon, Judge.

Suit by C. J. Gerlach & Bro. against W. A. Bell. From a judgment for plaintiff, defendant appeals. Reversed, and cause remanded, with instructions to dismiss.

Clegg & Embry, of Trinity, and Huggins & Kayser, of Houston, for appellant. Campbell & Campbell, of Livingston, for appellee.

BROOK, J. Perhaps it will be as well to incorporate the original petition of plaintiff in this cause, which was as follows:

"(1) During the summer of 1911 defendant and others sought to incorporate the Trinity Compress & Gin Company, at Trinity, Tex., and did so incorporate such company. That defendant approached plaintiff through Chas. J. Rogan and besought the plaintiffs to subscribe $1,000 to the enterprise, for which stock in said compress and gin company should be issued in due time, depicting to these plaintiffs the great profits and advantages that would accrue to the owners of stock in said compress and gin company then and there stating that the revenue from said investment would be great.

"(2) That in order to induce plaintiffs to invest $1,000 in such enterprise the defendant then and there bound and obligated himself to relieve the plaintiffs of such investment, and return to the plaintiffs their $1,000 at the end of one year should the plaintiffs be not satisfied therewith.

"(3) Now plaintiffs say that because of the promise and obligation of the defendant to indemnify them, and relying implicitly upon such promises and obligations, they did subscribe to the stock in said enterprise, and did at or about the time of said subscription pay some small portion of the $1,000.

"(4) That at the time the plaintiffs subscribed as aforesaid the stock was not then ready to issue, but that later, some time about or before September 26, 1911, the said stock was ready to be delivered and then it was these plaintiffs refused to go further until the defendant gave them his obligation in writing, binding and obligating himself in addition to his promises and obligations through the said Rogan and that on September 26, 1911, defendant wrote these plaintiffs a letter, making great promises of success, and on the point of plaintiffs' demand said, 'Regarding your stock will say, if you are not satisfied with it at the end of a year, I will take it off your hands.'

"(5) Plaintiffs say that defendant bound himself and became liable to the plaintiffs to pay to them at the expiration of one year $1,000 in exchange for said stock of $1,000 if plaintiffs were not satisfied therewith.

"(6) That before the expiration of one year and ofttimes after the expiration thereof plaintiffs advised defendant that they were not satisfied with said stock, and urged and demanded the defendant to pay to them their $1,000, but they say that defendant has wholly failed so to do, and wholly fails and refuses to answer correspondence through open mail, or by registered letter or by letters from plaintiffs' counsel; indeed, the plaintiffs say that the quiet and circumspect 'lobster' would envy the silence with which defendant has treated their oft demand for a compliance with his firmly bound obligations to them to pay the $1,000.

"(7) And, further, the plaintiffs say that they would not at any time have ventured such investment but for the solemn and positive promises and obligation of defendant to relieve them and protect them against loss further than the use of their money for one year, and, confidently relying upon the obligations and promises of defendant, they did lay out the said $1,000, and with which investment these plaintiffs are not satisfied, and here now tender in open court said stock asking that defendant be required to pay to them the said $1,000, with 6 per cent. interest from the date of one year after the date of said stock.

"(8) Wherefore plaintiffs pray the court that defendant be cited to appear and answer herein; that they have their judgment for the full sum of $1,000, with interest thereon at 6 per cent. from one year after the date of said stock, for cost of suit, and for such other and further relief, both general and special, in law and in equity, that they may show themselves justly entitled to," etc.

This case, as alleged by the pleadings, was tried with a jury, and resulted in a verdict for the appellees.

[1] In this court for the first time a motion is made, setting up, among other things, the fact that the county court was without juris-

diction of this cause, and therefore that this court is without jurisdiction of same. As shown by the plaintiffs' petition, plaintiffs sue in the county court of Trinity county for $1,000, with interest thereon at the rate of 6 per cent. per annum. Interest is of three kinds: First, conventional interest fixed by the parties in the contract; second, legal interest, that which is allowed by law when the parties have not agreed upon any particular rate; and, third, interest which is allowed as damages for the detention of money. The last kind, however, is not, strictly speaking, interest at all, but the legal rate of interest is merely used as the measure of damages. Article 4973, Vernon's Sayles' Texas Civil Statutes of 1914, gives the following definition of interest:

" 'Interest' is the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money."

Article 4974, Id., reads as follows:

" 'Legal interest' is that interest which is allowed by law when the parties to a contract have not agreed upon any particular rate of interest."

Article 4976 reads:
"The distinction between legal and conventional interest shall be known and recognized by the laws of this state."

Article 4977 provides:
"On all written contracts ascertaining the sum payable, when no specified rate of interest is agreed upon by the parties to the contract, interest shall be allowed at the rate of six per cent. per annum from and after the time when the sum is due and payable."

Article 4978 provides:
"On all open accounts, when no specified rate of interest is agreed upon by the parties, interest shall be allowed at the rate of six per cent. per annum from the first day of January, after the same are made."

Article 4979 provides:
"The parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten per cent. per annum on the amount of the contract."

Article 4980 provides:
"All written contracts whatsoever, which may in any way, directly or indirectly, violate the preceding article by stipulating for a greater rate of interest than ten per cent. per annum shall be void and of no effect for the amount or value of the interest only; but the principal sum of money or value of the contract may be received and recovered."

With reference to the matters in controversy here, it is sufficient to quote the statute, as above. The interest prayed for in this case and allowed by the court is not within the first specification above set out, that is, conventional interest fixed by the parties in the contract, so that the question to be determined in this cause is whether the interest prayed for in this suit is legal interest, or whether it is merely damages. Of course, if it is damages, it is a part of the amount in controversy, and the county court has no jurisdiction. Article 5, § 16, of the Constitution, regarding the jurisdiction of the county court, is as follows:

"The county court shall have original jurisdiction of all misdemeanors of which exclusive original jurisdiction is not given to the justice's court as the same is now or may hereafter be prescribed by law, and when the fine to be imposed shall exceed two hundred dollars, and they shall have exclusive jurisdiction in all civil cases when the matter in controversy shall exceed in value two hundred dollars and not exceed five hundred dollars, exclusive of interest; and concurrent jurisdiction with the district court when the matter in controversy shall exceed five hundred dollars, and not exceed one thousand dollars, exclusive of interest; but shall not have jurisdiction of suits for the recovery of land."

[2] The language of the Constitution "exclusive of interest" does not apply where the interest, so called, is given as a part of the damages, but only where it is expressly given by statute. The question in this case then is: Is the interest prayed for by plaintiff expressly given by the statute, or is it not strictly interest, but merely a part of the damages, for the measure of which the rate of interest is used? The question, then, further resolves itself into the inquiry, Does the contract sued on in this case come within the language of article 4979 of the statutes?

[3] In the first place, the contract was not a written contract at all, but was an oral agreement made through Chas. J. Rogan, acting for appellant, Bell, and C. J. Gerlach, acting for plaintiffs. This is shown by the plaintiffs in their petition in the following language:

"That defendant approached plaintiff through Chas. J. Rogan, and besought the plaintiffs to subscribe $1,000 to the enterprise, for which stock in said compress and gin company should be issued. * * * That in order to induce plaintiffs to invest $1,000 in such enterprise the defendant then and there bound and obligated himself to relieve the plaintiffs of such investment and return to the plaintiffs their $1,000 at the end of one year should the plaintiffs be not satisfied therewith. * * * That at the time the plaintiffs subscribed as aforesaid, the stock was not then ready to issue, but that later, some time about or before September 26, 1911, the said stock was ready to be delivered, and then it was these plaintiffs refused to go further until the defendant gave to them his obligation in writing, binding and obligating himself in addition to his promises and obligations through the said Rogan, and that on September 26, 1911, defendant wrote these plaintiffs a letter, making great promises of success, and on the point of plaintiffs' demand said: 'Regarding your stock, will say, if you are not satisfied with it at the end of a year, I will take it off your hands.' "

The letters referred to in the pleadings and the letters testified to by plaintiff, are as follows:

"Livingston, Texas, 9/2/1911:
"Mr. W. A. Bell, Trinity, Texas—Dear Sir: Herewith we inclose our check for $200.00, being the third installment, amounting to $500.00 total on 10 shares of compress stock, please acknowledge receipt. Mr. Bell, when we subscribed for this stock, it was understood with Mr. Rogan, that at the end of one year, if we were not satisfied with the purchase of this Compress Stock and wished to dispose of same, you were to take it off our hands at par. Will you please let us know whether or not you understand this as we do.

"With best wishes and many thanks for your kindness, we are. ·

"Yours very truly,    O. J. Gerlach & Bro."

"Mess. O. J. Gerlach & Bro., Livingston, Texas—Gentlemen: * * * Regarding your stock, will say, if you are not satisfied with it at the end of a year, I will take it off your hands, but I do not believe you will want to sell it.

"Yours truly,          W. A. Bell."

The most that could be claimed upon the petition hereinbefore set out was that the contract sued upon was an oral contract, and that the letters merely ratified the oral agreement, but even assuming that the letters do constitute a contract in writing, yet such contract does not ascertain the sum payable. Appellant's letter merely states that he will take the stock off of appellees' hands. Appellees' letter states that the agreement was that he would take it at par off their hands, but there is not a line to show what was the par value of the stock. Without some outside evidence, it is impossible. to take these letters and ascertain the amount that was due and payable.

In the case of McNeill et al. v. Casey, 135 S. W. 1130, which opinion was written by Rice, Justice, the following language is used:

"The first question raised by appellants in their brief is whether or not the county court of Williamson county had jurisdiction of the amount in controversy. This suit is based upon breach of contract for the recovery of $1,-000, with 8 per cent. interest thereon from the date of the alleged breach thereof. If plaintiff was entitled to recover interest upon said contract eo nomine, and not to recover the same as an element of damages for breach thereof, then the county court of Williamson county had jurisdiction; but otherwise not. In 2 Cyc. p. 565, it is said: 'Where interest on a principal amount is a part of the claim or subject-matter involved in the controversy, such interest will be considered as determining appellate jurisdiction, and interest which is not given eo nomine, as upon a contract ascertaining the sum payable, but which is a part of the damages, is to be included in the amount in controversy in determining appellate jurisdiction.'

"In 22 Cyc. p. 1495, it is said: 'Although in some cases of breach of contract to pay money, interest has been allowed thereon on the ground of an implied contract to pay interest that arises from the failure to pay the principal, the general rule, established by the great weight of authority, is that where there is a contract, express or implied, to pay money, even though such contract be silent as to interest, interest will be allowed upon its breach as damages, and not because of any promise to pay it. Interest in such cases is merely the measure of damages to be allowed, and this measure is a fixed and invariable standard, not subject to be varied because of peculiar or unusual damages sustained in any particular case, as the law contemplates no damages for the detention of money beyond the interest on such money. In some cases it has been held that, even where interest is provided for by contract in case of breach of contract to pay the principal sum when due, such interest is recoverable only as damages which have been liquidated by such agreement.'

"The settled rule in this state with reference to this matter seems to be that when interest is sought eo nomine, as flowing from and incident to the contract in writing sued upon, it will not be taken into account in determining the jurisdiction of the court; but the contrary is true where the same is sued for as an element of damages arising from the breach of the contract, and where the same is not specially recoverable as due under the contract itself. See Heidenheimer v. Ellis, 67 Tex. 426, 3 S. W. 666; Schultz v. Tessman & Bro., 92 Tex. 491, 49 S. W. 1031, and authorities there cited; Watkins v. Junker, 90 Tex. 584, 40 S. W. 11; Houston & Texas Central Railroad Co. v. Jackson, 62 Tex. 209, and authorities there cited; Dazey v. Pennington, 10 Tex. Civ. App. 326, 31 S. W. 312.

"In Heidenheimer v. Ellis, supra, which was a suit to recover the amount due upon a stated account and for interest thereon, wherein the court charged the jury, in effect, that if they believed that defendant was indebted to plaintiffs on stated account to return a verdict for the amount of said account, and interest thereon at 8 per cent. from the date of acknowledgment and promise to pay the same, it was contended that the charge was erroneous, in so far as it instructed the jury to allow interest from the time at which the payment was to have been made, etc. The court, in discussing this question, says: 'It is frequently said in the decisions of the courts that interest is the creation of the statute. In a certain sense this is true, but as applied to one class of cases the phrase is misleading. Interest cannot be allowed eo nomine, unless expressly provided for by statute; but in many instances it may be assessed as damages when necessary to indemnify a party for an injury inflicted by his adversary, though the statute be silent upon the subject.' Saying further: 'The whole subject of interest is very ably discussed by Senator Spencer in the case of the Rensselaer Glass Factory v. Reid, 5 Cow. (N. Y.) 604, and the distinction between the cases in which interest is allowed eo nomine and those in which it is allowed only by way of indemnification made very clear. Referring to the latter, the opinion said: "In such cases it is not an incident to the debt, but may be allowed under circumstances by way of mulct or punishment for some fraud or delinquency or injustice of the debtor, or for some injury done by him to the creditor." ' The court holding that, if it be conceded that the suit was not upon a written contract ascertaining a sum payable, as provided by article 2976 of the Revised Statutes (1879), nor upon open account as mentioned in article 2977 (in either event, as we understand it, interest would be allowed as upon a demand sued upon), yet remarked: 'It is a stated account to be paid in cash upon delivery of goods, the sale of which constituted its consideration, and which had been delivered when the accounting was had. Here is a manifest delinquency on the part of the debtors, working a gross injustice to the creditors, and resulting in a wrong which cannot be compensated by any sum less than the principal and the interest on the debt from the time at which it ought to have been paid,' citing cases, and thereafter holding, as we understand the case, that the amount sued for as interest might be alone recovered as damages. See, also, Savings Bank v. Sachtleben, 67 Tex. 420, 3 S. W. 733.

"In Baker v. Smelser, 88 Tex. 26, 29 S. W. 377, 33 L. R. A. 163, which was a suit for the conversion of goods of the value of $1,000, and interest thereon, it was held that the county court had no jurisdiction, because the amount sued for as interest was not in fact interest, but was recoverable as an element of damages for the alleged conversion, and therefore when added, as it must be, to the amount sued for, exceeded the jurisdiction of the court; Chief Justice Gaines saying, in delivering the opinion of the court: 'It is apparent from the record before us that the plaintiff must have claimed in his petition $1,000, the value of the goods converted, and additional damages for the conversion, measurable by the interest on that value from the date of conversion to the time of trial. If these damages are to be treated as "interest" within the meaning of that term as used in the section

of the Constitution from which we have quoted (section 16, art. 5), then the record fails to show that we have jurisdiction. If they are not to be so treated, then the sum sued for exceeds $1,000, exclusive of interest, and it is a case in which a writ of error lies to the judgment of the Court of Civil Appeals. Our statutes make no provision for allowing interest in actions of this character; but it belongs to a class of cases in which interest upon the amount of the pecuniary loss inflicted by the injury is allowed as a part of the damages. It is clear that in a suit for the conversion of a specific sum of money a recovery of that sum, without an allowance for the use of the money, would not adequately compensate the loss. The rate of interest established by law, being a fixed standard of the value of the use of money, is adopted by the court as the measure of that damage in such a case. When the statute does not expressly provide for the recovery of the interest, it is allowed, not eo nomine—that is, not as interest—but merely as damages. It would probably be more correct to say that rate of interest is resorted to in order to measure the damages accruing from the loss of the use of the money. As in case of the conversion of money, so in case of the conversion of goods, and in many others in which the statute does not expressly create a legal liability for interest. Heidenheimer v. Ellis, 67 Tex. 426, 3 S. W. 666. Recurring, then, to the provision of the Constitution now under consideration, we are of the opinion that it was intended to apply to cases in which interest is expressly given by statute, and not those in which the rate of interest is merely taken as a standard by which to measure in part the damages to be recovered. This case comes under the latter class; and, since we infer from the agreed statement and the judgment of the trial court that more than $1,-000 must have been claimed in the petition, we conclude that jurisdiction over it has been given by the statute.' Interest has been allowed for conversion or detention of money, and the same is allowed as damages, and not as interest on the money. See Bank v. Jones, 18 Tex. 811; Close v. Fields, 13 Tex. 623. Interest allowed as damages is regarded as such, and not as interest. See Perley on the Law of Interest, p. 23; Browne et al. v. Steck, 2 Colo. 70.

"Speaking with reference to county courts, section 16, art. 5, of our Constitution provides, among other things, that they shall have 'exclusive jurisdiction in all civil cases when the matter in controversy shall exceed in value $200 and not exceed $500, exclusive of interest; and concurrent jurisdiction with the district courts when the matter in controversy shall exceed $500 and not exceed $1,000 exclusive of interest.'

"Our statute on the subject of interest provides, in article 3101, formerly article 2976, Rev. Stat., as follows: That 'on all written contracts ascertaining the sum payable, when no specified rate of interest is agreed upon by the parties to the contract, interest shall be allowed at the rate of six per cent. per annum from and after the time when the same is due and payable.'

"Now it is clear from the Constitution that if the item sued for as interest can be held or regarded as interest, and not as an element of damages, then the court below had jurisdiction of the amount in controversy; but, if said amount sued for as interest was in reality recoverable, if at all, as an element of damages as a punishment for appellants' delinquency in holding the money, then the same cannot be regarded as interest, but must be added to the principal amounts sued for, which would place the amount in controversy beyond the jurisdiction of the court. Now it would seem that if, under the statute above quoted, the contract, breach of which is made the basis of plaintiff's recovery, clearly ascertained the sum payable,

then and in that event the interest sued for would be recoverable as interest and not as damages; but is the sum so payable clearly ascertained therefrom? We think not, for the reason that no amount is fixed definitely as payable from the terms of the contract, but in order to ascertain or determine the amount you must go outside of the contract and show its breach on the part of appellants before any sum can be recovered. It is true that upon certain conditions plaintiff would have a right to sue, and the measure of his recovery would be the amount stated in the contract; but this is not the amount ascertainable from the contract itself, but the ascertainment of the amount due is dependent upon a number of conditions outside of the contract, which would be necessary to show, in order to recover at all. We therefore think, under the authorities above quoted, that the amount sued for in this case as interest cannot be recovered as interest, but must be recoverable, if at all, as an element of damages for the purpose of compensating plaintiff for the detention of the money, and is based alone on appellants' delinquency or dereliction in failing to comply with the contract, the breach of which forms the basis of this suit. For which reason we hold that the amount in controversy was beyond the jurisdiction of the court; and since the court a quo had no jurisdiction, none can be conferred upon this court by appeal."

And so, in the instant case, while we would gladly, upon the case made out by appellees in the lower court, and which seems upon its face to be of great merit, be able to entertain the jurisdiction which has been conferred by statute upon the county court, but we are constrained to believe and to hold that the county court in this cause, under the pleadings, was without jurisdiction, and, therefore, that court having no jurisdiction, this court is also without jurisdiction.

The cause, therefore, is reversed and remanded to the lower court, with instructions to dismiss the same.

### On Motion for Rehearing.

HIGHTOWER, C. J. At a former day of this term, the judgment of the trial court in this cause was reversed, and the case remanded, with instructions to the trial court to dismiss the case. Appellees have in due time filed a motion for rehearing, praying this court to set aside its judgment in so disposing of this cause, and to affirm the judgment of the trial court.

In the motion for rehearing, appellees contend that this court erred in its opinion, on page 6 thereof, as shown by the following language of the court there used:

"The most that could be claimed upon the petition hereinbefore set out was that the contract sued upon was an oral contract, and that the letters merely ratified the oral agreement; but, even assuming that the letters do constitute a contract in writing, yet such contract does not ascertain the sum payable."

In this connection, appellees say that this court very probably overlooked the testimony of the witness Chas. J. Rogan, which was by deposition, and was as follows:

"My occupation during the summer of 1911 was vice president and General Superintendent of the Beaumont & Great Northern Railway

Company. When I first approached plaintiff with reference to the sale of the stock, he stated that he did not care to make the purchase of the Compress stock. Plaintiff first rejected the offer of sale, for the reason that he did not consider it a safe investment. I communicated such rejection to W. A. Bell, president of the Trinity Compress & Gin Company by word of mouth. I got an answer from my notice. The answer was verbal, also by letter; the letter on the subject has been lost. I did not find the letter from defendant Bell relative to and effecting a sale of this $1,000 worth of stock, and have exhausted every avenue and bypath in the search for said letter. The letter stated, and my verbal instructions were, that I could guarantee Mr. L. F. Gerlach that he (W. A. Bell) would return to him (Gerlach) dollar for dollar of the money paid for the Trinity Compress & Gin Company stock at the expiration of one year in the event he (Gerlach) was dissatisfied with the purchase. Mr. L. F. Gerlach accepted this proposition in a letter dated June 19, 1911; letter attached hereto and marked 'Exhibit 1' for identification. To the best of my knowledge I had said letter at the time I concluded the sale to plaintiff for the $1,000 stock. Yes; such representations were in the terms of such letter. I stated to Mr. Gerlach that W. A. Bell had authorized me to say that he (W. A. Bell) would take the stock off his hands at its face value at the end of one year if he (Gerlach) was dissatisfied. Mr. Gerlach authorized me to subscribe for the stock, as shown in his letter attached hereto, marked 'Exhibit 1' for identification. This letter, to the best of my knowledge, was simply a repetition of the verbal instructions, already given me by Mr. W. A. Bell, that he (Bell) would repurchase the stock of Mr. Gerlach at its face value at the end of one year in the event he (Mr. Gerlach) was dissatisfied; that is, the letter of instructions from Mr. Bell. I acted upon the letter from Mr. Bell, and upon verbal instructions. I made representations to plaintiff by virtue of said letter, and also on the verbal instructions which were already received. Such representations were as heretofore stated. As heretofore stated, I had verbal instructions from the defendant Bell relative to the sale of said stock in the Trinity Compress & Gin Company to the plaintiff, and I communicated such instructions to the plaintiff. Defendant Bell authorized me to make such representations and promises to plaintiff, and I did so."

It is contended by appellees in the motion for rehearing that this testimony on the part of the witness Rogan shows that the contract between Bell and Gerlach for the sale and purchase of the stock in question was a written contract, and that the same "ascertained the sum payable," etc., and that therefore the court erred in its original opinion in holding that the contract between the parties was not a written one ascertaining the amount payable.

[4] In reply to the motion for rehearing, we will say that the court did not overlook, in arriving at the conclusion reached in this case, the testimony of the witness Rogan, but had the same clearly in mind; but the court was of the opinion that the testimony of the witness Rogan in the motion showed only that the letter from Bell to himself, claimed to have been lost, was only authority in writing from Bell to him to enter into the contract with Gerlach for the sale and

purchase of the stock in question, and that such written authorization to him as Bell's agent to enter into a verbal agreement with Gerlach did not constitute, and would not have the legal effect to make the contract entered into between Gerlach and Bell, acting through his agent Rogan, a written contract between the parties, regarding the purchase and sale of the stock in question, and ascertaining the amount payable in the event of its breach.

We have said this much merely out of courtesy to counsel for appellees, and to show that the court did not overlook the testimony of the witness Rogan as apprehended by counsel.

The motion for rehearing is overruled.