## PERMUTIT CO. v. REFINITE CO.

Circuit Court of Appeals, Second Circuit.
July 9, 1928.

No. 343.

1. Patents ⊜⟹318(4¼)—Plaintiff held entitled to profits on infringing apparatus and on water softening mineral sold with it.

In suit for infringement of patent No. 1,-195,923, for water-softening apparatus, plaintiff *held* entitled to profits based on patented filter as machine and also on water softening mineral, called zeolites, sold with it, where, at time in question, zeolites for water softening were no more than scientific discovery, except for patent *in suit.*

2. Patents ⊜⟹318(6)—In patent infringement suit item of deferred advertising charged on books was not proper credit for accounting period.

In patent infringement suit, in which plaintiff chose for basis of accounting only sales made in years 1919 and 1920, item of deferred advertising appearing on defendant's books *held* not proper credit for overhead expenses in 1919 and 1920.

3. Patents ⊜⟹318(6)—Plaintiff in infringement suit was justified in taking defendant's books as admissions that there was no prepaid advertising considered deferred charge in year preceding accounting period.

In patent infringement suit, in which plaintiff chose for basis of accounting only sales made in years 1919 and 1920, plaintiff was justified in taking defendant's books showing no prepaid advertising in 1918, considered as deferred charge, as admissions that there was no such advertising in 1918.

4. Patents ⊜⟹318(6)—Percentage showing cost of guaranteeing infringing filters sold held proper credit on each sales contract plaintiff selected as profitable.

Percentage obtained by adding together all expenses of guaranty of infringing filter sold during the five years of its life and dividing sum by total number of sales contracts closed for same period *held* proper credit upon each sales contract which plaintiff selected as profitable.

5. Patents ⊜⟹318(6)—Where plaintiff's account was confined to sales contracts of infringing apparatus made and completed in 1919 and 1920, deferred selling expenses of 1918 held properly disallowed.

In patent infringement suit, where plaintiff chose for basis of an accounting only sales

made and performed in years 1919 and 1920, any deferred expenses of selling apportionable to 1918 contracts completed in 1919 and 1920 would be an improper credit, and were properly disallowed.

6. Patents ⊗⇒312(2)—In patent infringement suit, figures showing defendant's assets invested in infringing business taken from defendant's books were competent.

In patent infringement suit, figures in report which master used, showing defendant's assets invested in infringing business, taken from defendant's books, *held* competent evidence, where plaintiff's own account was derived from same books.

7. Patents ⊗⇒318(6)—That there was some noninfringing business was not fatal to allowance of interest on capital invested in infringing business.

That there was some noninfringing business which must be eliminated in calculations was not fatal to an allowance of interest on defendant's capital invested in infringing business.

8. Patents ⊗⇒318(6)—In determining interest on defendant's capital invested in infringing business, master properly refused to be limited by share capital of defendant.

In determining interest on defendant's capital invested in infringing business, master properly refused to be limited by share capital of defendant, where it had taken over assets of its predecessors which became part of its capital.

9. Patents ⊗⇒318(3)—Where plaintiff in patent infringement suit chose profitable sales as basis for accounting, amounts uncollected on profitable contracts were proper credits.

Where plaintiff chose for basis of accounting for infringement profitable sales made during certain years, amounts which were not collected on contracts which remained profitable in spite of partial default were proper credits.

10. Patents ⊗⇒318(6)—Where plaintiff chose profitable sales of infringing apparatus as basis for accounting, loss on unprofitable contracts could not be credited on profitable contracts selected.

Where plaintiff in patent infringement suit chose for basis of accounting only profitable sales made during certain period, defendant could not carry over loss on contracts, where buyer failed to pay enough to make contract profitable, and use it as credit on contracts which plaintiff selected and which remained profitable.

Appeal from the District Court of the United States for the Western District of New York.

Patent infringement suit by the Permutit Company against the Refinite Company. From a final decree upon an accounting under an interlocutory decree, each party appeals. Reversed and remanded.

Cross-appeals from a final decree in equity upon an accounting under an interlocutory decree for the infringement of a patent.

The plaintiff is the owner of patent No. 1,195,923, to Robert Gans, for water-softening apparatus, claims 1 and 5 of which were sustained and held infringed by this court in Permutit Co. v. Harvey Laundry Co., 279 F. 713. The accounting for sales during the years 1919 and 1920 was referred to a special master, whose report the District Court confirmed. Several questions are raised, but the chief is whether the profits recovered should be based upon the patented filter taken as a mere machine, or whether they should also include the water-softening mineral, called zeolites, which was sold with it. Gans had already taken out patents for the manufacture of zeolites, and the defendant had its own patent for another process of producing them. The District Court, following the master, held that the profits were not apportionable and should therefore be allowed in full.

James J. Kennedy, of New York City, for plaintiff.

John E. Stryker, of St. Paul, Minn., and William M. Connelly, of Buffalo, N. Y., for defendant.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). [1] While we agree that zeolites were well known when Gans filed the patent in suit, we held in the appeal from the interlocutory decree that his filter was the first practically adapted for use as a water softener and the Circuit Court of Appeals for the Sixth Circuit has independently reached the same conclusion. 13 F.(2d) 454. Later, and after the years covered by this accounting, experiments were made which may or may not have shown that an upflow filter will operate as well as Gans'. Be this as it may, none such were known at the time in question, during which, so far as appears, zeolites for water softening were no more than a scientific discovery, except for the patent in suit. Necessity apparently was the mother of invention. It is true that the defendant made a few sales of the mineral alone, which, perhaps, though the point is not wholly free from doubt, were not used in the infringing apparatus. Aside from the sale of 4,000 pounds to Hurd in 1918, the proof is extremely hazy as to these, and it would be quite unwarranted to suppose that there was a market for anything like the quantities actually sold, except when used in the patented apparatus. That being true, it seems to us plain that the patent is not for an improvement, and that the plaintiff is entitled to all the profits gained by the defend-

ant in its exploitation of the filter as it was sold. The situation is not like that in Westinghouse, etc., Co. v. Wagner, etc., Co., 225 U. S. 604, 32 S. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, where the patentee is confronted with the necessity of disentangling profits due to two inventions or of showing that he cannot do so. Here nothing was commingled, and the whole profits were properly assessed.

The cause therefore comes down to the method of assessment. The plaintiff chose for the basis of an accounting only those sales which had been made and performed in the years 1919 and 1920, which were not the whole number on the defendant's books for those years. Moreover, as it was looking to profits alone, it chose to claim upon only those sales which showed a profit, and this still further limited the number. The controversy turns on only a few items, which we take up separately.

### Advertising Expenses.

[2, 3] On the defendant's books appears an item of deferred advertising, amounting to $39,000. Haskins & Sells prepared a statement for the defendant from its books, which is in evidence, and which says that this was for prepaid advertising. So far as we can find, this is the only evidence on the subject in the record. If so, this was not a proper credit for 1919 and 1920, and the plaintiff's accountants were right in deducting it from the defendant's indirect or overhead expenses. The defendant argues that, if so, there should be a similar item added to the expenses of 1919, to represent the amount carried over from 1918. This would be true, if in 1918 there was prepaid advertising which was considered a deferred charge. The books show nothing of the sort; nor does the record. The plaintiff was justified in taking the books as admissions, and, although they were not conclusive, it rested on the defendant to supplement them with proof.

The master, in adding any advertising charge at all, was wrong; the account was right as it stood. Possibly he assumed that the deferred charge was for advertising which had already appeared, but the effect of which on sales might properly be estimated as still partly in the future. Even so, we think that the books should have been taken against the defendant, and they contained no similar charge in 1918. Theoretically, it is true, advertising may be always regarded for a time as in part a deferred charge, even though the outlay was in the year considered, but any such allocation is purely speculative. More-

over, even if so regarded, the defendant made no attempt to set up such an item to be carried over from 1918.

The plaintiff has not appealed from the master's allowance against it; hence we shall not disturb the account at all as to this item, and defendant's appeal merely fails.

### Guaranty Expenses.

[4] The defendant guaranteed all the infringing filters for three years, and was called upon to make good its guaranty in substantial sums. So far as these required payments during 1919 and 1920—i. e., $20,000—the plaintiff's accountants gave credit to the defendant, but they did not give any credit for the amounts paid later. This was, however, a proper credit against any contracts completed in the years in question. The defendant has added together all the expenses of guaranty during the five years of its life, and divided the sum by the total number of contracts actually closed for the same period. Owing to the fact that all the guaranties had not expired, this figure is not perfect, and possibly the payments should have been spread only over contracts completed, and not merely over those closed. The defendant's method, however, favors the plaintiff, and we will accept it. The percentage so obtained is a proper credit upon each contract which the plaintiff selects as profitable.

Of course, when this is done, the credits allowed in the plaintiff's accountants' report must be canceled, since these would then be pro tanto a reduplication. The master's method of computation seems to us to be equally unwarranted as in the case of advertisements, and his allowances should be ignored in the new computations. On this assigned error we think that the defendant is right, and the account will have to be restated, though the evidence appears to be all at hand.

### Deferred Selling Expenses.

[5] On the defendant's books for 1920 appeared an item of $130,000 for deferred selling expenses. This item was calculated upon the proportion of contracts uncompleted on December 31, 1920. We are entitled to take it as accurate, since the defendant made it. This sum the plaintiff's accountants reduced to $93,000, which represents that proportion of $130,000 that the uncompleted contracts, never canceled, bear to the whole uncompleted contracts. Since the plaintiff's account was based only on contracts completed before January 1, 1921, it was fair to exclude from it all expenses which the defendant it-

self had apportioned against uncompleted contracts.

The defendant, as in the case of advertising, insists that a similar item should be allowed for deferred selling expenses of 1918, to be carried over into 1919. In the first place, there is no evidence in the record from which such an item can be estimated. The books did not carry one, and the defendant made no proof. But there is an added reason why such a credit would not be proper. The plaintiff's account does not include contracts made in 1918, and completed in 1919 and 1920, but is confined only to those made and completed in 1919 and 1920. Hence any deferred expenses, apportionable to 1918 contracts completed in 1919 and 1920, would be an improper credit. The master made the correct allowance for this item, and the assigned error must fail.

### Interest on Capital.

[6, 7] The plaintiff's account contains no allowance for interest on invested capital. The master in his supplementary report calculated interest on all the defendant's assets for the two years in question, and apportioned it upon all sales made, completed and uncompleted. The percentage so reached he then applied to the contracts which the plaintiff selected as profitable. In some cases this put them into the unprofitable class, but he has allowed interest only in those cases in which they remained profitable.

The plaintiff objects to this, because, so it says, there was no adequate proof of the defendant's assets invested in the infringing business. The figures in Morrison's report, which the master used, were taken from the defendant's books. The plaintiff objected to the introduction of this report in many respects, among others in respect of the interest credits, but did not object because the figures were taken from the books. Moreover, its own account was derived from the same books, which both parties have used without question in the proceeding. So we think that the figures were competent evidence. This does not prove that all the assets were used in the infringing business, and there was in fact some noninfringing business, which, of course, must be eliminated in the calculations. But that is not fatal to an allowance of interest. Western Glass Co. v. Schmertz Wire Glass Co., 226 F. 730 (C. C. A. 7). In that case, as here, the plant had been used both for infringing and noninfringing sales, but

a proportion of the interest corresponding to the infringing business was nevertheless allowed. Seabury & Johnson v. Am Ende, 152 U. S. 561, 569, 14 S. Ct. 683, 38 L. Ed. 553, distinctly recognizes such a possibility, and the case at bar is a proper one to apply it, especially as the noninfringing business was trifling.

[8] The master was clearly right in adding the Ardmore plant, if he took the zeolites as part of the infringement. Furthermore, he was right in refusing to be limited by the share capital of the defendant. On January 9, 1918, it took over the assets of its predecessor, and these became part of its capital. The master appears to us to have correctly calculated this part of the account, and, though it was inconsistent with the method he employed as to advertisements and guaranty expenses, since the latter was wrong, his inconsistency was justified. The plaintiff fails in its appeal as to this item.

### Uncollectible Contracts.

[9, 10] Such of the contracts selected by the plaintiff as proved unprofitable because of the buyer's default in payment should not figure in the account at all. So much as was not collected upon any which remained profitable, in spite of a partial default, is, of course, a proper credit; but, if a buyer failed to pay enough to make the contract profitable, the defendant may not carry over the loss, and use it as a credit upon contracts which the plaintiff selects, and which remain profitable. This follows upon the plaintiff's conceded right to select only profitable contracts and ignore others. The plaintiff, therefore, succeeds on this portion of its appeal.

It results that the defendant wins in its appeal as respects guaranty expenses, and the plaintiff as respects uncollectible accounts. The errors will require a new general computation of the account, because the items cannot be stated separately; indeed, it will perhaps require a new statement as to each contract. For this the plaintiff is to blame in selecting only profitable contracts. It is to be hoped that the parties can agree upon the figures; and it will be understood that, except in so far as change is necessary because of what has been said, the account will stand.

Decree reversed, and cause remanded, for a new statement of the account. No costs on this appeal.