Elizabeth L. COX and Jake L. Hamon,
Petitioners,

v.

Leland DAVISON et al., Respondents.

Jake L. HAMON et al.

v.

Leland DAVISON et al.

Nos. A–10612, A–10613.

Supreme Court of Texas.

Oct. 20, 1965.

Rehearing Denied Dec. 8, 1965.

Stubbeman, McRae, Sealy & Laughlin, W. B. Browder, Jr., Midland, for petitioners.

Frank C. Ashby, Garland Casebier, Midland, for respondents.

NORVELL, Justice.

■ The Texas rule is that a cotenant who produces minerals from common property without having secured the consent of his cotenants is accountable to them on the basis of the value of the minerals taken less the necessary and reasonable cost of producing and marketing the same. Burnham v. Hardy Oil Co., 147 S.W. 330 (Tex. Civ.App., 1912), affirmed, 108 Tex. 555, 195 S.W. 1139 (1917); Stroud v. Guffey, 3 S. W.2d 592 (Tex.Civ.App., 1927), affirmed, 16 S.W.2d 527, 64 A.L.R. 730 (Tex.Sup., 1929); White v. Smyth, 214 S.W.2d 953 (Tex.Civ.App., 1947), affirmed, 147 Tex. 272, 214 S.W.2d 967, 5 A.L.R.2d 1348 (1948); Davis v. Atlantic Oil Producing Co., 87 F.2d 75 (5th Cir. 1936). The controlling question in this case is whether under the facts here presented interest charges are a part of the necessary and reasonable cost of producing and marketing.

Leland Davison and others, respondents here, are the producing cotenants. The petitioners, Elizabeth L. Cox and Jake L. Hamon are the nonconsenting cotenants. Judgments in two cases (Nos. 6269 and 6270 on the District Court's docket) were rendered by the trial court in favor of Leland Davison and his associates. These judgments were affirmed by the Court of Civil Appeals in one opinion as the legal questions in both cases were identical. 385 S.W.2d 864.

It was stipulated that respondents, Leland Davison and those allied with him owned 28/32 of 13/16 leasehold working interest in and to the four quarter sections involved in the two suits under lease from others than petitioners; that petitioners Elizabeth L. Cox and Jake L. Hamon owned 3/32 of all oil, gas and other minerals in and under and that may be produced from said four tracts; that the Cox-Hamon interest was not under lease; that respondents desired to develop the tracts by drilling thereon, but petitioners refused to join in the proposed program, whereupon respondents at their own expense drilled wells upon the premises and completed the same as producers. By this stipulation the dispute was reduced to one involving interest charges. As stated by the Court of Civil Appeals, the only question presented for decision is whether respondents in an accounting with petitioners, the nonconsenting cotenants, were entitled to a credit claim of six per cent interest on petitioners' proportionate part of the money advanced by respondents to pay for producing and selling the minerals from the lands held by the parties as tenants in common.

■ We are unable to agree with the holdings of the trial court and the Court of Civil Appeals. Interest is an incident of debt and is not payable in the absence of an obligation binding one person to pay money to another. Barker v. Torrey, 69 Tex. 7, 4 S.W. 646 (1887); Maryland Casualty Co. v. Lee, 165 S.W.2d 135, (Tex. Civ.App., 1942, wr. ref.). The obligation may be expressly set forth in a contract or it may be implied in law. Where one cotenant decides to develop a common property, the law raises no obligation binding a nonjoining cotenant to pay a part of the costs of development. However, when mineral property is developed by one cotenant and as a result thereof he acquires minerals which at one time underlay the common property, the problem of account-

ing to the nonconsenting cotenant arises. Cases dealing with debts or obligations implied by law are not directly applicable. In Shaw & Estes v. Texas Consolidated Oils, 299 S.W.2d 307 (Tex.Civ.App.1957, ref. n. r. e.) the distinction between circumstances wherein a cotenant may be bound by the doctrine of implied obligation and situations in which he may not was discussed. Following Stephenson v. Luttrell, 107 Tex. 320, 179 S.W. 260 (1915), the Court of Civil Appeals in an opinion by Mr. Justice Gannon said:

> [W]ith reference to money necessarily and beneficially spent, the (Supreme Court in Stephenson v. Luttrell) continues: ' * * * the principle of contribution has no element of speculation in it. In cases of this kind it is implied that the person seeking contribution had authority from his cotenant to expend the money that was actually spent. It is the same as if he had been actually instructed by his cotenant to expend that much money for him in improving the lot. This much is implied by law.' Because the principle is so well known, it is unnecessary to cite authority for the proposition that a cotenant incurring speculative expense in connection with exploration and development of oil, gas, and mineral properties is not entitled to a personal judgment against his cotenant for reimbursement, but only to be reimbursed out of production if and when production results."

Both the trial court and the Court of Civil Appeals recognized that Cox and Hamon owed no debt or personal obligation to respondents. As there is no debt or enforceable personal obligation, it follows that a claim for interest as such cannot be supported. Under our view of the case it would be immaterial whether respondents actually borrowed money and paid interest thereon in order to prosecute their drilling operations.[1] We perceive no good reason when accountability is the problem at hand, why a distinction should be made between an operator who borrows money to hire a drilling rig and one who pays such rental charges out of his own funds.

We realize that in equitable accounting between cotenants, it is not essential that legal concepts be technically or strictly construed. Ordinarily, money will make money and it is probable that had the producing cotenants put their money to work in some other business undertaking, they probably would have realized some returns therefrom. Arguments may be and have been marshalled to support the equitable claim of the producer. It is he who takes the risk and, if successful, he usually produces financial gain for both himself and his cotenants. However, there is something to be said for the nonjoining cotenant. Actual production of minerals is not the only way by which benefits may be obtained from the ownership of mineral interests in land. Drilling may and often does condemn property for mineral purposes. A tenant in common as the owner

---

1. Oklahoma has a rule of accountability between cotenants similar to that which obtains in this state. In Earp v. Mid-Continent Petroleum Corp., 167 Okl. 86, 87, 27 P.2d 855, 91 A.L.R. 188, the Court said:

   "[W]hen one tenant in common enters upon the tenancy and produces oil and gas, he is liable to account to his cotenants for the market value of such production less the reasonable and necessary expense of developing, extracting, and marketing the same."

   In Essley v. Mershon, Okl., 262 P.2d 417, 3 O. & G.Rep. 193 (1953) the Supreme Court of Oklahoma refused to rec-ognize interest as a recoverable item of production and marketing expense because the claim, prior to judgment, was an unliquidated one. In Wood Oil Co. v. Corporation Commission, Okl., 268 P.2d 878, 3 O. & G.Rep. 455 (1953) the Court refused to allow interest on the operating cost of a well largely upon the ground that there was no evidence to show that the operator "was charged or paid any interest on the funds it used in operating this well or that such expense was in any way necessary to obtaining the production now impounded in the hands of the crude oil purchaser."

of property is legally entitled to make such use of it as he sees fit, subject to those qualifications necessarily imposed by society for the promotion of the public good and those dictated by the qualities of the property and the characteristics of its ownership. The right of one cotenant to appropriate the property of another is sanctioned only because the mineral estate is such that necessarily the rights of one cotenant must be interfered with if another cotenant is to be permitted to exercise those rights properly belonging to him. As between the producing cotenant and the non-joining cotenant a balance of equities has been struck. The rule of accountability is the proportionate market value of the product less the proportionate necessary and reasonable costs of producing and marketing. This measure in its present form does not include interest and we decline to rewrite the formula.

In both cases, the judgments of the trial court and the Court of Civil Appeals are reversed and judgments here rendered that respondents take nothing.

On Motion for Rehearing

NORVELL, Justice.

The respondents in their motion for rehearing say that our original opinion tends to leave the impression that the rule announced therein is one of long standing, whereas this case is actually one of first impression. Particular emphasis is laid upon the statement that the "measure (of accountability) in its present form does not include interest and we decline to rewrite the formula". It is urged that this Court has never held that interest is not a recoverable cost of production and consequently it would not be a rewriting of the formula to now say that interest is a recoverable cost of production.

To allow interest as a part of the production costs would constitute a variance from the established formula to the extent of going contrary to the general rule that interest will not be allowed in the absence of an obligation to pay money owed by the person sought to be held upon an interest charge. This is the rule supported by the Texas cases. Of course the essential obligation to pay may be either expressed or implied by law. The argument urged here and accepted by the Court of Civil Appeals, as evidenced by the cases cited in its opinion, is that under the factual situation presented by the record, the law has in effect implied an obligation binding the non-consenting cotenants to pay interest charges to the operating cotenant. But, here the obligation runs the other way. The operating cotenant has taken and sold petroleum products belonging to the non-consenting cotenant. However, because of the peculiar legal relationship existing between the parties,—they being cotenants of oil producing property, the usual rule of conversion is not applied. The problem is one of accounting and we have held that in accounting the operating cotenant is entitled to a credit for his necessary and reasonable cost of producing and marketing the same. This, of course, does not mean that the non-consenting cotenant owed an obligation of any kind to the operating cotenant. This case is not analogous to one involving the payment of taxes or the discharge of any other legal obligation owed by the non-consenting cotenant. No implied obligation can arise upon the theory that the operating cotenant has with the consent or upon the implied request of petitioners, expended money for the mutual benefit of the estate held in common by the parties. The petitioners here are non-consenting cotenants. For these reasons we say that interest is not a part of the accounting formula. Invariably, the reports of the Texas decisions which allow a claim of reimbursement asserted by one cotenant against another, will disclose that some obligation of the non-paying cotenant was lessened or discharged, or that the non-paying cotenant expressly or impliedly consented to an expenditure for the mutual benefit of the estate from

which an obligation to repay could be implied. Such is not the situation here.

Respondents' motion for rehearing is overruled.

POPE, Justice (dissenting).

The former dissenting opinion is withdrawn and this one is substituted for it.

The majority refuses to allow the producing cotenants to recover legal interest upon the capital they advanced to drill sixteen producing wells in which the nonproducing cotenants proportionately participate. The basis for this result appears to be either that (1) the nonproducing cotenants did not agree to pay the cost for which reason there is no debt, or (2) costs are recoverable only in nonspeculative beneficial advances, and the drilling of oil wells is speculative, or (3) policy reasons, with respect to interest only, forbid reimbursement of costs to the active cotenant who took all the risk. We shall examine these reasons.

Petitioners Cox and Hamon own ⁹⁄₃₂ of the oil, gas and other minerals in the tracts on which Davison drilled sixteen producing wells. The parties have agreed that Davison advanced $114,069.54 for the sole benefit of the passive cotenants as their share of the costs, and that the active cotenants vainly sought the joinder of the nonoperators in the drilling venture. Despite some disturbing language in the course of the majority opinion, it is the settled law of Texas that an active cotenant may recover out of the production his necessary and reasonable cost of producing and marketing the product. We arrive, therefore, at a statement of the narrow issue. Is interest on the capital advanced by the active cotenants recoverable as an item of cost or expense? It is my judgment that the majority at once falls into error by posing a variant and misleading question. It asks: Are costs expended by the active cotenants for the benefit of the passive cotenants in the nature of debts? Concluding that they are not debts the majority holds that in-

terest is not collectible. In my opinion, the issue is shifted from, "Is the interest on capital advanced a cost?" to "Is the capital advanced a debt?" The latter is not the real problem at all. The basis for the settled law that the passive cotenant must account to the active one upon successful completion of a well, is that it restores to the active cotenant the funds he expended in the venture, the costs he incurred for the benefit of all cotenants. The extent to which this rule applies and the range in which the passive cotenant's share is held accountable is illustrated in Burnham v. Hardy Oil Co., 147 S.W. 330, 334 (Tex.Civ.App.1912), affirmed 108 Tex. 555, 195 S.W. 1139 (1917):

"As to the appellee the Rio Bravo Oil Company, which asks for an affirmance of the judgment in its favor, we think it would be improper to do so. Concerning its liability to plaintiffs with reference to oil taken from the land, we think the Texas Land & Cattle Company, having an unquestioned undivided interest in the league, had, by virtue of its undivided ownership in the land, the right to extract oil from the tract. In case oil was not found, it would have to bear the loss of its experiment and could not call on a nonparticipating cotenant for contribution. But where it found oil and marketed the same, the cotenant requiring it to account to him for his interest in the product, measured by his interest in the land, would be required to allow his proportion of the necessary cost of producing and marketing the product. Wolfe v. Childs, 42 Colo. 121, 94 P. 292, 126 Am.St.Rep. 152. This reasonable expense would include the cost of the machinery and appliances and other means necessary and proper to the production. In other words, all reasonable expenses incurred in the production and marketing would have to be deducted from the gross value, before a division of the proceeds between the cotenants. The result of the above is that the Texas Land & Cattle Com-

pany, or its lessees of the land, had the right to pay and to charge to the fund derived from the product the reasonable cost of what was necessary to be done in producing and marketing the oil. This being so, it, or its lessee, had the right to contract with the Rio Bravo Oil Company for a pumping plant and a pipe line for utilizing the oil and to pay for the same, either in money or in oil; and in a suit by other cotenants against the producing cotenant for its share of the value of the oil, the cost of the plant and pipe line to the extent that it is fair and reasonable should be allowed. And the Rio Bravo Oil Company would not be liable to plaintiffs for the oil it received for such necessary improvements, if it was a fair equivalent therefor. * * *."

Many cases hold that the passive cotenant must pay his share of the costs but they do not do so because the items are debts. The recovery by the active cotenant is not as a creditor. He recovers costs as a charge against the proceeds of the oil or other commodity. He recovers his costs, not his debt. Stroud v. Guffey, 3 S.W.2d 592 (Tex.Civ.App.1927), affirmed 16 S.W. 2d 527, 64 A.L.R. 730 (Tex.Com.App.1929); Durham v. Scrivener, 259 S.W. 606, 614 (Tex.Civ.App.1923), affirmed 270 S.W. 161 (Tex.Com.App.1925); Rosse v. Northern Pump Co., 353 S.W.2d 287 (Tex.Civ.App. 1962, writ ref., n. r. e.); Estes v. Texas Consolidated Oils, 266 S.W.2d 272, 275 (Tex.Civ.App.1954, no writ).

The majority cites cases which hold that interest is an incident of debt, which is true; and then concludes no debt, no interest. That is not true. Interest is a statutory creature in Texas. Article 5069 says that " 'Interest' is the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money * * *." What the majority overlooks is that interest can arise by law as well as by contract. Bell v. C. J. Gerlach & Bro., 205 S.W. 470, 471 (Tex.Civ.App.1917, no

writ). We shall mention a few instances. In Donaldson v. Meyer, 261 S.W. 369 (Tex. Com.App.1924), Donaldson furnished funds to Meyer under a contractual arrangement that failed by reason of Meyer's mental incompetence. Donaldson's prayer for contractual eight per cent interest on the sum of his advancements was denied but he was allowed six per cent legal interest, the Court saying:

"* * * The right of Donaldson to recover the $3,000 used by Meyer and wife as necessaries is not based on the contract that Meyer entered into, it having been ascertained that he was incapable of entering into a binding contract, but the relief given Donaldson is on the equitable ground that he is entitled to recover the money he had paid to Meyer, and which had been used by Meyer and his wife for necessaries, and, the right to recover not being based upon any contract of Meyer, then Donaldson could not recover the rate of interest mentioned in the contract, but could recover only the legal rate of 6 per cent."

Norris v. Vaughn, 278 S.W.2d 582 (Tex. Civ.App.1955, no writ) allowed interest on a cotenant's advancements for oil development and in so holding relied upon Schluter v. Sell, 194 S.W.2d 125, 133 (Tex.Civ. App.1946, no writ). Schluter sums up the reason for these holdings:

"It is the general rule that one who lends money to or makes advancements for another is entitled to interest, although nothing is said about interest. Parsons v. Parsons, Tex.Com.App., 284 S.W. 933; and in 40 Tex.Jur. 210, it is said that where 'one co-tenant pays taxes on property jointly owned (he) is entitled to contribution, and the state's lien for such taxes passes to him so that he has a lien on his co-tenant's interest.' Where pleaded interest is usually allowed on taxes paid by one having an interest in land from the date of

payment. McDermott v. Steck Company, Tex.Civ.App., 138 S.W.2d 1106."

In Hensel v. Kegans, 8 Tex.Civ.App. 583, 28 S.W. 705 (1894, no writ) the Court cited Freeman on Cotenancy for the principle that one cotenant who pays title expenses and advances taxes on behalf of another cotenant, upon principles of equity may recover his advancements, and enforce an implied lien. The Court's order for remand was "with direction to the district court to ascertain and fix the amounts expended with lawful interest. * * *" Accord: Wooley v. West, 391 S.W.2d 157, 161 (Tex. Civ.App.1965, writ ref. n. r. e.); Robinson v. Moore, 1 Tex.Civ.App. 93, 20 S.W. 994 (1892, no writ), cited with approval in Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620, 627 (1937); Winn v. Winn, 131 Neb. 650, 269 N.W. 376, 379 (1936).

Hill v. Moore, 85 Tex. 335, 19 S.W. 162, 167 (1892) also concerned obligations imposed by law. A cotenant who advanced funds to perfect title and pay taxes was entitled to reimbursement and the Court decreed the manner:

"* * * Looking to the relation of the parties to the land, and to the certificate by virtue of which it was acquired, we are of opinion that appellee will be entitled to the reasonable cost of procuring title to so much of the land as appellants may recover, with *interest* thereon from time title was obtained; and, in addition to this, will be entitled to recover the sum paid as taxes on the lands appellants recover, *with interest* on same from time several payments may have been made. * * *." (Emphasis added.)

The second reason suggested by the majority opinion for denial of interest upon the capital advanced for the benefit of the passive cotenants is that the drilling of oil wells is speculative. Unless this is so, I can see no reason for the quotation from Stephenson v. Luttrell, 107 Tex. 320, 179 S.W. 260 and Shaw & Estes v. Texas Consolidated Oils, 299 S.W.2d 307 (Tex.Civ. App.1957). To the present time, the test has been one of viewing the situation after the drilling was completed. If the venture is unsuccessful it is speculative and the one taking all the risk suffers all the cost. If the well is completed as a producer, it is regarded as nonspeculative and the passive cotenant's share is accountable proportionately. The elements of speculation are squeezed out by the time the venture is finished. This is the holding and the settled law as announced both in Luttrell and Texas Consolidated Oils. If it is the opinion of the majority that the drilling of sixteen producing oil wells, viewed after the fact, is speculative, it should clearly so state.

The third reason for the majority's rejection of interest as a valid cost is based on policy. "Something (is) to be said for the nonjoining cotenant," says the opinion, "Actual production of minerals is not the only way by which benefits may be obtained from the ownership of mineral interests in land. Drilling may and often does condemn property for mineral purposes." Interest has not been allowed in the past and the Court declines "to rewrite the formula." In a case of original impression about interest as a cost item, we hardly are rewriting anything. But the real fallacy of such an approach is the inherent inconsistency in applying the rule. The majority concedes that costs are recoverable and then, after assuming that interest is a cost, gives its reasons for rejecting this isolated cost item. Are we reduced to a case by case determination of policy on which items of costs will be allowed or disallowed? Whether interest is a cost at all is the question. The majority holds, however, that even if it be a cost, on policy grounds, it will not be allowed. For each claimed item of cost, the Court in the future will now determine anew the policy and equity of the many cost items.

We return to the only issue in the case. In a case in which it is admitted that the active cotenants advanced $114,069.54 for the passive cotenants who, without any

risk of capital, became ³²⁄₃₂ owners of sixteen producing oil wells and were therefore benefited in a venture which in law was nonspeculative, are the active cotenants entitled to legal interest as costs for the "use or forbearance or detention of money"? We have cited a number of Texas authorities which have in fact allowed interest as costs.

On principles of cost accounting, interest on the funds advanced, if uncollected, is a loss. An active cotenant who already has employees and a drilling rig, nonetheless can charge off as costs the wages he pays and a fair rental for the use of his rig.

"Just as rent is the return for the use of land, and wages the return for the workman's labor, so interest is considered as the return for the use of capital. Included in the proponents of this argument are economists, engineers, plant managers and owners who adhere to the economic interpretation of profits. 'Net profit' to them usually means pure profit, which is the profit that is attributed to the compensation for the risk taken in carrying on a business enterprise. Girded with this argument, the interest-inclusionist maintains that the interest upon the capital investment is just as logically a production cost item as is wages. To exclude it as an item of cost causes the production cost to be understated. By treating interest as a production cost (overhead expense), the resultant net profit is a pure profit or return for the business risk only. There is really a good argument for including interest as a cost, for to do so segregates the profit allocated to the use of capital goods from the profit attributed to the risk involved in the business venture. Certainly, if the production costs of two different enterprises in a given industry are to be comparable, where one business rents its plant and the other owns it, then interest on plant investment should be treated as a cost by the later concern. This is true because the rent paid by a tenant invariably includes an interest investment charge. Also, the interest on plant investment must be considered by the management in the long run, when selling prices are established, if an adequate return on the owner's capital investment is to be earned." Van Sickle, Cost Accounting-Fundamentals and Procedures, p. 270 (1938); See note, 3 Houston Law Review, 109, 112–113.

Whether interest is a proper item of cost is new to us. This is our first case. It is not new in other areas of the law. A patent owner can recover the revenues earned by an infringer, but he must allow the infringer his production costs. In those cases interest as a cost item has often been closely examined. Even though the infringer is a wrongdoer, he may claim interest upon his capital outlay as a necessary cost item. He may do so whether he actually borrows money or merely furnishes his own capital to produce the sales. International Industries v. Warren Petroleum Corp., 248 F.2d 696, 702 (3rd Cir. 1957); W. H. Miner, Inc. v. Peerless Equipment Co., 115 F.2d 650 (7th Cir. 1940); Barber Asphalt Paving Co. v. Standard Asphalt & Rubber Co., 30 F. 2d 281 (7th Cir. 1928); Permutit Co. v. Refinite Co., 27 F.2d 695 (7th Cir. 1927); Producers' & Refiners' Corporation v. Lehmann, 18 F.2d 492, 502 (8th Cir., 1927). International Industries, supra, cites many authorities for the rule and also states the reasons for it:

"* * * The interest on the capital which the appropriator invests in his endeavor is allowed in an effort to arrive at a realistic determination of the actual costs in the standard of comparison analysis. This is a practical business problem to be solved by a method as accurate as possible, and the disallowance of interest would merely distort the actualities of the money expended."

I would affirm.

HAMILTON, J., joins in this dissent.